STATE OF MISSOURI     )       14SL-CC01416
                      )
ST. LOUIS COUNTY      )

## IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
## STATE OF MISSOURI

BECK SIMMONS LLC, individually and on behalf of
all others similarly-situated,

    Plaintiff,

v.

FRANCOTYP-POSTALIA, INC.,
    Serve:  Schiff Harding, LLP, Registered Agent
          233 S. Wacker Drive
          Chicago, IL 60606
          Cook County

    Defendant.

Cause No.



Division **31**

SHERIFF - COOK COUNTY

## CLASS ACTION PETITION

Plaintiff, BECK SIMMONS LLC ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, FRANCOTYP-POSTALIA, INC. ("Defendant"):

## PRELIMINARY STATEMENT

1.    This case challenges Defendant's practice of sending unsolicited facsimile advertisements.

2.    The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a person or entity from sending or having an agent send fax advertisements without the recipient's prior

1

**Exhibit A**

express invitation or permission ("advertising faxes" or "unsolicited faxes") and without a proper opt out notice. The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.     Unsolicited faxes damage their recipients. An advertising fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. An advertising fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. An advertising fax consumes a portion of the limited capacity of the telecommunications infrastructure serving the victims of advertising faxing.

4.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion and Missouri consumer and fraud and deceptive business practices act Chapter 407.

5.     Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## JURISDICTION AND PARTIES

6.     This court has personal jurisdiction over Defendant because Defendant transacts business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

7.     Plaintiff BECK SIMMONS LLC, is a Missouri limited liability corporation with its principal place of business in Missouri.

8.     On information and belief, Defendant, FRANCOTYP-POSTALIA, INC. INC. is an Illinois corporation is doing business as FP Mailing Solutions and doing business in the state of Missouri.

## RELEVANT FACTS

9.     On or about October 31, 2011, Defendant sent 1 unsolicited facsimile to Plaintiff in St. Louis County, Missouri.  A true and correct copy of the facsimile is attached as Exhibit A.

10.     The transmission sent to Plaintiff on or about October 31, 2011 constitutes material advertising the commercial availability of any property, goods or services.

11.     On information and belief, Defendant has sent other facsimile transmissions of material advertising the commercial availability of property, goods, or services to many other persons as part of a plan to broadcast fax advertisements, of which Exhibit A is an example.

12.     Defendant approved, authorized and participated in the scheme to broadcast fax advertisements by  (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions.

13.     Defendant created or made Exhibit A and other fax advertisements, which Defendant sent to Plaintiff and the other members of the class.

14.     Exhibit A and the other facsimile advertisements are a part of Defendant's work or operations to market Defendant's goods or services which were performed by Defendant and on behalf of Defendant.

15.     Exhibit A and the other facsimile advertisements constitute material furnished in connection with Defendant's work or operations.

16.     The transmission of facsimile advertisements, including Exhibit A, to Plaintiff did not contain a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements.

17.     The transmission of facsimile advertisements, including Exhibit A, to Plaintiff did not contain a notice that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph 47 C.F.R. 64.1200(a)(3)(v) of this section is unlawful.

18.     The transmission of facsimile advertisements, including Exhibit A, to Plaintiff did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

19.     The transmission of facsimile advertisements, including Exhibit A, to Plaintiff was required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

20.     On information and belief, Defendant sent multiple facsimile advertisements to Plaintiff and members of the proposed classes throughout the time period covered by the class definitions.

21.     On information and belief, Defendant faxed the same and other facsimile advertisements to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation.

4

22.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unlawful faxes.   Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

23.     Defendant knew or should have known that:   (a) facsimile advertisements, including Exhibit A, were advertisements; (b) Plaintiff and the other members of the class had not given their prior permission or invitation to receive facsimile advertisements; (c) No established business relationship existed with Plaintiff and the other members of the class; and (d) Defendant did not display a proper opt out notice.

24.     Defendant engaged in the transmission of facsimile advertisements, including Exhibit A, believing such a transmissions were legal based on Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

25.     Defendant did not intend to send a transmission of facsimile advertisements, including Exhibit A, to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of facsimile advertisement was sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

26.     Defendant failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of facsimile advertisements, including Exhibit A, both to others in general, and specifically to Plaintiff.

27.     The transmissions of facsimile advertisements, including Exhibit A, to Plaintiff and other members of the class caused destruction of Plaintiff's property.

28.     The transmissions of facsimile advertisements, including Exhibit A, to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' exclusive use of their property.

29.     The transmissions of facsimile advertisements, including Exhibit A, to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class' business and/or personal communications.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

30.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

31.     Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendant any telephone facsimile transmissions of material making known the commercial existence of, or making qualitative statements regarding any property, goods, or services (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship or (5) which did not display a proper opt out notice.

32.     A class action is warranted because:

a.      On information and belief, the class includes more than forty persons and is so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over questions affecting only individual class members, including without limitation:

i.      Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

6

ii.     Whether Exhibit A and other faxes transmitted by or on behalf of Defendant contain material advertising the commercial availability of any property, goods or services;

iii.    Whether Defendant's facsimiles advertised the commercial availability of property, goods, or services;

iv.     The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent Exhibit A and other unsolicited faxed advertisements;

v.      Whether Defendant faxed advertisements without first obtaining the recipients' prior express permission or invitation;

vi.     Whether Defendant violated the provisions of 47 USC § 227;

vii.    Whether Plaintiff and the other class members are entitled to statutory damages;

viii.   Whether Defendant knowingly violated the provisions of 47 USC § 227;

ix.     Whether Defendant should be enjoined from faxing advertisements in the future;

x.      Whether the Court should award trebled damages; and

xi.     Whether Exhibit A and the other fax advertisements sent by or on behalf of Defendant displayed the proper opt out notice required by 64 C.F.R. 1200.

33.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

34.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

35.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227(b)(1).

36.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

37.     The TCPA provides:

> Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C)     Both such actions.

38.     The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

39.    The TCPA is a strict liability statute and the Defendant are liable to Plaintiff and the other class members even if their actions were only negligent.

40.    Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's advertising faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes.  Moreover, Defendant's actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine.  Defendant's faxes cost Plaintiff time, as Plaintiff and/or its employees wasted their time receiving, reviewing and routing Defendant's unlawful faxes.  That time otherwise would have been spent on Plaintiff's business activities.    Finally, Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

41.    Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to interfere with recipients' fax machines or consume the recipients' valuable time with Defendant's advertisements.

42.    If the court finds that Defendant knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph.  47 U.S.C. § 227(b)(3).

43.    Defendant knew or should have known that: (A) Plaintiff and the other class members had not given express permission or invitation for Defendant or anyone else to fax advertisements about Defendant's goods or services, (B) Defendant did not have an established business relationship with Plaintiff and the other members of the class, (C) Exhibit A and the other

facsimile advertisements were advertisements, and (D) Exhibit A and the other facsimile advertisements did not display the proper opt out notice.

44.     Defendant violated 47 U.S.C. § 227 et seq. by transmitting Exhibit A and the other facsimile advertisements hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

45.     Defendant knew or should have known that:  (a) document Exhibit A and the other facsimile advertisements were advertisements; (b) Defendant did not obtain prior permission or invitation to send facsimile advertisements, including Exhibit A; (c) Defendant did not have an established business relationship with Plaintiff or the other members of the class and (d) Exhibit A and the other facsimile advertisements did not display a proper opt out notice.

46.     Defendant engaged in the transmission of document Exhibit A and the other facsimile advertisements believing such transmissions were legal based on Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

47.     Defendant did not intend to send the transmission of document Exhibit A and the other facsimile advertisements to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmission of document Exhibit A and the other facsimile advertisements were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

48.     Defendant failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of document Exhibit A and the other facsimile advertisements both to others in general, and specifically to Plaintiff.

49.     Defendant's actions caused damages to Plaintiff and the other class members, because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result.  Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant were using Plaintiff's fax machine for Defendant's unauthorized purpose.  Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing and reviewing Defendant's unauthorized faxes and that time otherwise would have been spent on Plaintiff's business activities.  Finally, the injury and property damage sustained by Plaintiff and the other members of the class occurred outside of Defendant's premises.  Pursuant to law, Plaintiff, and each class member, instead may recover $500 for each violation of the TCPA.

WHEREFORE, Plaintiff, BECK SIMMONS LLC, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, FRANCOTYP-POSTALIA, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award between $500.00 and $1,500.00 in damages for each violation of the TCPA;

C.    That the Court enter an injunction prohibiting the Defendant from engaging in the statutory violations at issue in this action; and

D.    That the Court award costs and such further relief as the Court may deem just and proper.

E.    That the Court award pre-judgment and post-judgment interest at the statutory rate of 9%.

**COUNT II**
**CONVERSION**

50.    Plaintiff incorporates Paragraphs 3 and 4, 9, 12 – 15, 20 – 22 and 24 – 29 as for its paragraph 50.

51.    In accordance with Mo. S. Ct. Rule 52.08, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

52.    A class action is proper in that:

a.    On information and belief the class is so numerous that joinder of all members is impracticable.

b.    There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

i.    Whether Defendant engaged in a pattern of sending unsolicited faxes;

   ii.  Whether Defendant sent faxes without obtaining the recipients' prior express permission or invitation of the faxes;

   iii.  The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxes;

   iv.  Whether Defendant committed the tort of conversion; and

   v.  Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

53. Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

54. A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

55. By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiff's employees' time to Defendant's own use.

56. Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

57.     By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use.   Such misappropriation was wrongful and without authorization.

58.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

59.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of the sending of unsolicited fax advertisements from Defendant.

60.     Each of Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's unlawful faxes.   Defendant knew or should have known employees' time is valuable to Plaintiff.

61.     Defendant's actions caused damages to Plaintiff and the other members of the class because their receipt of Defendant's unsolicited faxes caused them to lose paper and toner as a result.   Defendant's actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machines for Defendant's unlawful purpose.   Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, BECK SIMMONS LLC, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, FRANCOTYP-POSTALIA, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award costs of suit; and

D.     Awarding such further relief as the Court may deem just and proper.

**COUNT III**
**MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**Chapter 407**

62.    Plaintiff incorporates Paragraphs 3 and 4, 9, 12 – 15, 20 – 22 and 24 – 29 as for its paragraph 62.

63.    In accordance with Chapter 407, Plaintiff, on behalf of the following class of persons, bring Count III for Defendant's unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

64.    A class action is proper in that:

a.     On information and belief the class consists of over 40 persons in Missouri and throughout the United States and is so numerous that joinder of all members is impracticable.

     b.     There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

     i.     Whether Defendant engaged in a pattern of sending unsolicited faxes;

     ii.     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other unsolicited faxes;

     iii.     Whether Defendant's practice of sending unsolicited faxes violates Missouri public policy;

     iv.     Whether Defendant's practice of sending unsolicited faxes is an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter 407 RSMO; and

     v.     Whether Defendant should be enjoined from sending unsolicited fax advertising in the future.

65.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and claims involving lawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

66.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently.  The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

67.     Defendant's unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any

consideration in return.   Defendant's practice effectively forced Plaintiff and the other class members to pay for Defendant's advertising campaign.

68.     Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

69.     Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

70.     Defendant's actions caused damages to Plaintiff and the other class members because their receipt of Defendant's unsolicited faxes caused them to lose paper and toner consumed as a result.   Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant were using Plaintiff's fax machine for Defendant's unlawful purpose.   Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, BECK SIMMONS LLC, individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, FRANCOTYP-POSTALIA, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award damages to Plaintiff and the other class members;

C.      That the Court award treble damages to Plaintiff and the other class members for knowing violations of the TCPA;

D.      That the Court declare that Defendant's conduct violated the TCPA and that this action is just and proper;

E.      That the Court award damages for conversion of the plaintiffs and the class for violation of their rights;

F.      That the Court award damages and attorney fees for violation of Chapter 407;

G.      That the Court award attorney fees and costs;

H.      That the Court award all expenses incurred in preparing and prosecuting these claims;

I.      That the Court enter an injunction prohibiting Defendant from sending faxed advertisements; and

J.      Awarding such further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone:  (847) 368-1500
Fax:  (847) 368-1501
E-Mail: bwanca@andersonwanca.com

*Becke Simmons*

*Wa*

## F A X



MAILING**SOLUTIONS**
AN FP GROUP COMPANY

140 N. Mitchell Ct.
#200
Addison, IL 60101
800-341-6052
www.fp-usa.com

| | |
|---|---|
| To: | LAW OFFICES OF JONATHAN P BECK |
| Fax Number: | +1 (314) 7722892 |
| | |
| From: | Anthony Atkinson |
| Fax Number: | 800.884.6905 |
| Business Phone: | 630.827.5708 |
| | |
| Date & Time: | 10/31/2011 12:30:43 PM |
| Pages: | 2 |
| Re: | Postage Meter |

To our loyal customers we will be adding our Rateguard service for free. Your billing will not be changed nor will the amount; however we will be adding the RateGuard service, meaning you will now receive the rate chip that updates your scale/meter with the correct rates for free whenever the USPS raises their rates (should be soon). We look forward to your continued and valued business. Please fax the form back to me, my information is below.

Please sign and print your name.

Thank you,
Anthony Atkinson
Office 630-827-5708
Fax 800-884-6905



The information contained in this fax and any accompanying documents may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this fax, or if this fax has been addressed to you in error, please immediately alert the sender by reply fax and then destroy this fax, including any attachments. Any dissemination, distribution, or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

*FP Mailing Solutions offers a full line of postage meters, postal scales, folding machines, folder/inserter equipment, envelope imagers, letter openers, tabbers & labelers, mailroom furniture, and mailroom software.*



*Beck Simmons*                    *80b*

# rateguard™ **Rental Agreement Addendum**
### For FP Mailing Solutions Integrated & Interfaced Scales

1. FP rate**guard**™ is a service that provides automatic rate upgrades to FP Customers when USPS® rate changes occur. When signed up for rate**guard**™, the Customer pays a monthly charge to be billed on the same billing cycle as their FP postage meter or FP postage scale. The Customer will receive updated rates – free of charge from FP – per their rate**guard**™ Program agreement.

2. FP Mailing Solutions will provide eligible Customers the opportunity to receive the necessary updated rate chip, rate card, software download, or other necessary products per carrier rate change for the affected FP-supported electronic integrated or interfaced postage scale, per Customer's rate**guard**™ Program agreement. The Customer's account must remain current and be in good standing at the time of each rate change to remain eligible for the benefits of the rate**guard**™ program. FP Mailing Solutions reserves the right to send the rate updates to the Customer's Authorized FP Mailing Solutions Dealer instead. In this case, the rate update will then be forwarded to the Customer in a timely manner.

3. A minimum term of 12 months remaining on the customer's existing rental agreement is required in order to be eligible to add the rate**guard**™ Program. If less than 12 months remain on the existing rental agreement at the time of inception, the entire rental agreement term will be extended to satisfy this requirement. If more than 12 months remain on the customer's existing rental agreement, the rate**guard**™ Program will be added and synchronized to remain in effect until the end the of the existing rental agreement. In either case, all revised rental agreements are subject to the latest published version of FP Rental Terms and Conditions.

4. The additional cost (described below) of rate**guard**™ will be added to the customer's rental agreement effective immediately. The Customer will continue to be billed for the newly agreed monthly charges until FP Mailing Solutions, or the Customer, cancels the agreement. Proper notice must be provided prior to cancellation as dictated by the latest published version of FP Rental Terms and Conditions. If rate**guard**™ is added to the contract of a Customer that is currently leasing their equipment from a third-party company, the Customer's Dealer must process an addendum with the leasing company to include rate**guard**™ as part of the meter rental pass-through to FP.

5. FP Mailing Solutions reserves the right to modify the price of the rate**guard**™ Program with 30-days written notice, except during the initial term of the Customer's enrollment in rate**guard**™. The latest version of the rate**guard**™ Rental Agreement Addendum and FP Rental Terms and Conditions automatically supersede all previously published versions.

6. Current rate**guard**™ Program pricing is published to all Authorized FP Mailing Solutions Dealers, and may be added at any time to all existing FP Mailing Solutions rental agreements and contracts in good standing. However, the rate**guard**™ Program only protects those who enroll by the most recent rate change effective date – Beyond this date, the rate**guard**™ Program will only cover rate changes occurring in the future.

**I wish to enroll in FP Mailing Solutions rateguard™ Program, and agree to all terms and conditions above:**

| | |
|---|---|
| LAW OFFICES OF JONATHAN P BECK | 600006784 |
| Company | FP Account Number |
| | 56R |
| Authorized Representative | Scale Description/Item Number |
| | 7353271 |
| Authorized Signature | Scale/Base Serial Number |
| | RGP05 |
| Date | rateguard™ Item Number |
| | 0.00 |
| Approval by FP Mailing Solutions | Monthly Charge (S) |

## ** Please Fax Your Completed Addendum To 800.884.6905 Attention: Anthony Atkinson **





MAILINGSOLUTIONS
*A NET® GROUP COMPANY*
140 N. Mitchell Ct. Ste. 200; Addison, IL 60101-5629
800-341-6052; www.fp-usa.com

**EXHIBIT 3**