# EXHIBIT A

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washinton, DC 20554**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | CG Docket No. 02-278 |
| Petition of MedLearning, Inc. | ) | |
| And Medica Inc. for Declaratory Ruling | ) | CG Docket No. 05-338 |
| To Clarify Scope and/or Statutory Basis | ) | |
| For Rule 64.1200(a)(3)(iv) | ) | |
| And/or for Waiver | ) | |
| | ) | |

## PETITION FOR DECLARATORY RULING AND/OR WAIVER

Pursuant to Section 1.2 of the Federal Communications Commission ("the Commission") rules, MedLearning, Inc. ("MedLearning") and Medica, Inc. ("Medica") (collectively, "the petitioners"), respectfully request that the Commission issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) ("the Rule") of the Commission's regulations does not apply to fax advertisements sent with the prior express consent or permission of the recipient. In the alternative, the petitioners respectfully request that the Commission clarify that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b). At a minimum, the Commission should clarify that solicited faxes sent with effective opt-out notices do not violate the Rule or any other regulation promulgated by the Commission under the TCPA.

In the absence of either ruling, the petitioners respectfully request that, pursuant to Section 1.3 of the Commission's rules, the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) with respect to faxes that have been transmitted by or on behalf of

DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK   •   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168 •  FAX:  (203) 458-4424
JURIS NO. 415438

MedLearning and Medica with the prior express consent or permission of the recipients or their agents.

## **INTRODUCTION**

MedLearning and Medica each face a putative class action lawsuit, brought pursuant to the Telephone Consumer Protection Act ("TCPA"), based on the sending of solicited faxes that contained an effective opt-out notice. Despite the fact that the plaintiffs in these actions consented to receive the faxes at issue, and suffered no harm as a result of receiving the faxes at issue, the plaintiffs in those lawsuits now seek millions of dollars on behalf of the putative class, claiming that the petitioners violated the Rule because the opt-out language on the faxes allegedly was not strictly compliant with the Rule's requirements.

47 U.S.C § 227(b) codifies, in part, the TCPA. The plain language and scope of Section 227(b) is expressly limited to unsolicited faxes, which the statute defines to exclude faxes sent with consent. Thus, no regulation adopted under Section 227(b) properly could extend to solicited faxes.

However, the scope and applicability of the Rule are unclear as it contains confusing and inconsistent language regarding the opt-out notice requirements. This confusion and uncertainty regarding the Rule's opt-out notice requirements have led to numerous legal disputes and petitions to the Commission. The present petitioners therefore urge the Commission to resolve this uncertainty by clarifying that the Rule does not apply to solicited fax advertisements.

In the alternative, the petitioners request that the Commission issue a declaratory ruling that Section 227(b) of the TCPA is not the statutory basis for the Rule.  Such a ruling would clarify the Commission's authority for this Rule while making clear that solicited faxes sent without the precise opt-out notification language requirements listed in the Rule cannot form the basis of a private action under the TCPA.

Should the Commission decline to issue the declaratory rulings sought above, the Commission at least should clarify that a fax that is transmitted pursuant to the prior express invitation or permission of a fax recipient, and includes an effective opt-out notice, does not violate any Commission regulation promulgated pursuant to any provision of the TCPA.

Finally, in the absence of any of the declaratory rulings requested above, the petitioners request that the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) from the effective date of the Rule for any fax transmitted by or on behalf of the petitioners with the consent of the recipient.  Subjecting the present petitioners to class action lawsuits brought by plaintiffs who agreed to receive the fax transmissions would not serve the Commission's goals, the public interest, or the legislative intent of the TCPA.

## BACKGROUND

MedLearning and Medica are each currently defending a lawsuit brought by a serial TCPA-class action plaintiff.  In Kaye v. Merck & Co., Inc. et al., 3:10cv1546(RNC) (D.Conn.), filed on Sept. 29, 2010, the fax at issue, which is attached to the plaintiff's complaint, is addressed to plaintiff Roger Kaye, M.D., and invited him to attend an interactive telesymposium on "important clinical information about schizophrenia and

3

bipolar disorder." The bottom of this fax contained the following statement: "To be removed from the fax list for this program, please initial here ___ and fax this form back to (207) 288-2307 or call (877) 963-3532." The plaintiff in <u>Kaye</u> does not allege that he received any other faxes or that he attempted to utilize the opt-out mechanism without success.

On behalf of Merck & Co., Inc. ("Merck"), MedLearning reached out to the physicians invited to the telesymposium. To ensure that it did not send any unsolicited faxes, MedLearning placed a phone call to each invitee to determine consent before sending a fax invitation. Despite this careful process to ensure that only solicited faxes were sent to the invitees of the telesymposium, Merck and MedLearning have been subject to a class action lawsuit seeking millions of dollars in damages. The <u>Kaye</u> plaintiff's primary theory of liability is that the Commission's Rule requires an extensive and precise opt-out notice on every fax, even where express consent was obtained prior to sending. Thus, Merck and MedLearning face a lawsuit even though the harm to the recipients of the faxes is nonexistent.

Similarly, in <u>Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc. et al.</u>, 3:14cv00405(SRU) (D.Conn., filed March 30, 2014) the fax at issue, which is attached to the plaintiff's complaint, is addressed to Dr. Jose Martinez, and invited him to attend a meeting "to discuss Female Sexual Dysfunction ("FSD"), including Hypoactive Sexual Desire Disorder ("HSDD") including pathophysiology models, epidemiology, and diagnosis." The bottom of this fax contained the following statement: "To be removed from the fax list, please initial here ___ and fax this form back to (207) 288-2307 or call (866) 503-

3008." The plaintiff in <u>Physicians Healthsource</u> does not allege that it received any other faxes or that it attempted to utilize the opt-out mechanism without success.[1]

On behalf of Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), Medica reached out to certain invitees to the discussion on FSD and HSDD. Medica followed the same process described above whereby it placed a phone call to ensure consent before sending any fax. Despite this careful process to ensure consent, and despite the fact that the fax at issue contains an effective opt-out notice, Medica and Boehringer also face a class action lawsuit seeking millions of dollars in damages, as the <u>Physicians Healthsource</u> plaintiff claims that the fax did not contain a proper opt-out notice pursuant to the Rule.

The district court in <u>Kaye</u> has phased discovery, prioritizing precertification discovery on the issue of whether the subject telesymposia faxes were solicited or unsolicited.[2] The court has stayed additional discovery proceedings in the case pending the completion of the initial round of discovery and/or "the outcome of proceedings before the Federal Communications Commission concerning the Commission's regulation of solicited faxes under the TCPA."[3] Before ordering the partial stay, the court expressed serious concern about the application of the opt-out notice requirements to solicited faxes.

---

[1] Despite the fact that the fax at issue in <u>Physicians Healthsource</u> is addressed to Dr. Jose Martinez, he is not a party to that lawsuit.

[2] <u>See</u> <u>Kaye</u>, 3:10cv1546, Docket No. 114, p. 1 and Docket No. 126, p. 7.

[3] <u>Kaye</u>, 3:10cv1546, Docket No. 114, p. 1. The Court also stayed those additional proceedings pending the result of the certiorari petition in the U.S. Supreme Court in <u>Nack v. Walburg</u>, 715 F.3d 680 (8th Cir. 2013). The Supreme Court denied certiorari in <u>Nack</u>. <u>See</u> <u>Nack v. Walburg</u>, 134 S. Ct. 1539 (Mar 24, 2014).

In <u>Physicians Healthsource</u>, Medica and Boehringer have moved to dismiss the plaintiff's claim on the ground that the fax concerning the discussion of FSD and HSDD is not an advertisement.[4]  The plaintiff has filed an objection to these motions and the parties are awaiting a ruling from the Court.

**ARGUMENT**

I.   **THE COMMISSION SHOULD ISSUE A DECLARATORY RULING TO CLARIFY THE RULE.**

The Commission has discretion to issue a declaratory ruling where, as here, such ruling would remove unnecessary uncertainty.  5 U.S.C. § 554(e), 47 C.F.R. § 1.2(a).  The uncertainty as to scope and statutory basis of the Rule is demonstrated by the numerous filings in federal district courts and before the Commission.  Private lawsuits that rely on the Rule unnecessarily burden defendants and the courts with claims Congress never intended to create.  The Commission should therefore issue a declaratory ruling to clarify the scope and statutory basis of the Rule.

A.   **The Commission Should Issue a Declaratory Ruling to Clarify that the Rule Does Not Apply to Solicited Faxes.**

The Commission should clarify that the Rule applies only to unsolicited faxes because the Rule and other guidance from the Commission is ambiguous.  In addition, excluding solicited faxes from the TCPA's ambit aligns with the legislative intent and plain

---

[4] In <u>Kaye</u>, Merck and MedLearning also deny that the fax at issue constitutes an advertisement under the TCPA.

language of the TCPA; namely, to regulate unsolicited faxes.  The Rule states, in pertinent part:

> No person or entity may: …
>
> Use a telephone facsimile machine, computer, or other device to send an ***unsolicited*** advertisement to a telephone facsimile machine, unless – …
>
> A facsimile advertisement that is sent to a recipient that ***has provided prior express invitation or permission*** to the sender must include an opt-out notice that complies with the requirements in paragraph a(4)(iii) of this section.

47 C.F.R. § 64.1200(a)(4)(iv) (emphasis added).

The Rule does not make sense on its face.  Because the Rule begins by limiting the scope to unsolicited faxes, yet later references faxes sent with express permission, it is impossible to tell whether the Rule is intended to reach solicited as well as unsolicited faxes. The JFPA Order only adds to the confusion.  The Order first explains that "the opt-out notice requirement only applies to communications that constitute unsolicited advertisements." JFPA Order, ¶ 42 n.154.  Only later, in a paragraph dealing with the issue of faxes sent based on consent received prior to the effective date of the rules, does the Order state that an opt-out notice would be required "to allow consumers to stop unwanted faxes in the future."  Id. at ¶ 48.  A reasonable interpretation of this provision is that, to the extent any opt-out notice requirement was intended by the Commission to apply to faxes sent with consent, it was intended to apply only where that consent was obtained prior to the effective date of the rules.  In any event, given these ambiguities and contradictions, there is legitimate uncertainty regarding whether Section 64.1200(a)(4)(iv) applies to solicited faxes.  Entities

such as Medica and MedLearning should not be required to defend costly and time-consuming putative class action lawsuits which seek millions of dollars in damages, where such lawsuits are based on an ambiguous and contradictory regulation.

The Commission should clarify that the Rule does not apply to fax advertisements that were sent with the permission or consent of the recipient as such an interpretation comports with the text and legislative history of the TCPA. Indeed, both the text and the legislative history make clear that The TCPA's opt-out requirements apply only to unsolicited advertisements. See 47 U.S.C. § 227(b)(1)&(2); id. § 227(a)(5) (definition of "unsolicited advertisement," expressly excludes any fax advertisement sent with the recipient's "prior express invitation or permission."). See also S. Rep. No. 102-178 at 3 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970 ("The bill as introduced proposed to ban artificial or prerecorded messages to residential consumers and to emergency lines, and to place restrictions on unsolicited advertisements delivered via fax machine."); S. Rep. No. 109-76 at 1 (2005), reprinted in 2005 U.S.C.C.A.N. 319, 319 (showing that, in enacting JFPA, Congress meant only to "[c]reate a limited [EBR] statutory exception to the current prohibition against the faxing of unsolicited advertisements," and for those "unsolicited advertisements," to require "notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements."). There is no indication whatsoever that Congress intended to regulate solicited advertisements.

Moreover, interpreting the Rule to apply to solicited fax advertisements would render it invalid. By limiting Section 227(b) to unsolicited fax advertisements, Congress restricted

the Commission's jurisdiction to that particular type of communication. See Am. Library Ass'n v. FCC, 406 F.3d 689, 705 (D.C. Cir. 2005) ("[T]he Commission can only issue regulations on subjects over which it has been delegated authority by Congress …"). Accordingly, the Commission did not obtain the authority to regulate solicited faxes when Congress passed a statute regulating unsolicited faxes. Thus, the Rule is invalid to the extent it purports to regulate solicited faxes and is promulgated pursuant to the Commission's authority under Section 227. The Commission should construe the Rule to avoid these problems.

Finally, interpreting the Rule to apply to solicited faxes would raise significant constitutional concerns. Imposing an opt-out notice requirement on consensual communications between fax senders and recipients would not be consistent with the First Amendment. Assessing potentially massive statutory damages based on alleged technical deficiencies in such notices, under circumstances where the recipient has expressly invited or consented to the fax, also raises substantial Due Process concerns. Accordingly, the Rule should be interpreted in a manner to avoid these constitutional problems.

**B.      Alternatively, the Commission Should Issue a Declaratory Ruling to Clarify that 47 U.S.C. § 227(b) Is Not the Statutory Basis for the Rule.**

If the Commission declines to interpret Section 64.1200(a)(4)(iv) to exclude fax advertisements for which the sender has obtained prior express consent, the Commission should issue a declaratory ruling that Section 227(b) of the TCPA is not the statutory basis for the Rule, in order to clarify the Commission's authority for the Rule and to make clear that the Rule cannot form the basis of a private lawsuit.

The statutory basis for Section 64.1200(a)(4)(iv) is not clear. The Commission cited eleven different statutory provisions in the JFPA Order as authority for the multiple amendments it made to Section 64.1200, of which the addition of Section 64.1200(a)(4)(iv) was only one.  It is therefore unclear if the Commission relied on its authority under Section 227 (which contains the private right of action provision) in promulgating Section 64.1200(a)(4)(iv), or on one of the other cited provisions.  A clarification by the Commission that its basis for promulgating Section 64.1200(a)(4)(iv) was some statutory provision other than Section 227(b) would serve both the Commission's interests and promote the public's interest in fairness and justice.

By making clear that Section 64.1200(a)(4)(iv) is not grounded in the Commission's authority under Section 227(b), the Commission could assist businesses by removing the threat of massive class action lawsuits based solely on communications with consenting consumers.  At the same time, articulating a different statutory basis for the rule would preserve the Commission's ability to enforce the rule as appropriate using its broad, flexible enforcement powers.  Purported violations of the rule where there is no actual harm could then still be addressed, but would not be subject to multi-millions of dollars in statutory damages claims.  By contrast, declining to clarify the basis of Section 64.1200(a)(4)(iv) leaves the courts to guess at the Commission's exercise of jurisdictional authority, complicating the class action suits that are pending around the country and prejudicing litigants who could otherwise have a clear defense.

The Commission therefore should issue a declaratory ruling clarifying that the statutory provision the Commission relied on in promulgating Section 64.1200(a)(4)(iv) of its rules was *not* Section 227(b).

## II.  THE COMMISSION SHOULD CONFIRM THAT SUBSTANTIALLY COMPLIANT OPT-OUT NOTICES ON SOLICITED FAXES SATISFY SECTIONS 64.1200(A)(4)(III) AND (IV) OF THE COMMISSION'S RULES.

Even if the Commission maintains that it has authority under Section 227(b) to regulate solicited faxes, the Commission should recognize that strict compliance with the notice requirements specified for *unsolicited* faxes is not necessary for faxes expressly invited or consented to by the recipient. When Congress enacted the TCPA, one of its purposes was to establish restrictions on the use of fax machines to transmit "unsolicited advertisements" — that is, "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5). Among other topics, Section 64.1200 of the Commission's rules sets out various requirements for companies that transmit unsolicited faxes, including authority to transmit unsolicited faxes to parties with whom the sender has an established business relationship, provided the faxes include an opt-out notice and comply with other requirements.  47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).

The MedLearning and Medica faxes at issue in the Connecticut district court actions are far different from the unsolicited advertisements Congress sought to restrict.  In the first place, nothing on the face of those faxes promotes the commercial availability or quality of

any good or service; nor do those faxes contain the name of any commercially available product.  Rather, the MedLearning fax is an invitation to a "telesymposium on important clinical information about schizophrenia and bipolar disorder," and the Medica fax is an invitation to attend a meeting "to discuss Female Sexual Dysfunction ("FSD"), including Hypoactive Sexual Desire Disorder ("HSDD") including pathophysiology models, epidemiology, and diagnosis."

Assuming *arguendo* that these faxes constituted "advertisements," they were sent with permission.  In each instance, MedLearning or Medica placed a personal phone call to the office of each fax recipient and  followed a careful process to ensure consent before sending any fax. The recipients' fax numbers were obtained through those calls.  If the physicians or other health care professionals' offices did not provide the fax number and consent to send the fax, then no fax was sent.  Moreover, each fax contained a clear and conspicuous opt-out notice on the first page with all the necessary information to effect a cost-free opt-out.  See § 64.1200(a)(4)(iii). Neither Kaye nor Physicians Healthsource has alleged an attempt to use this opt-out process unsuccessfully.

In the absence of the broader declaratory ruling requested herein, the Commission should at least clarify that a fax sent pursuant to the recipient's prior express invitation or permission and that includes a demonstrably effective opt-out notice complies substantially with 47 C.F.R. § 64.1200, whether or not the opt-out notice is in precise conformity with the opt-out notice required for *unsolicited* faxes.  Here, the opt-out notice provided in the faxes that are the subject of the Connecticut district court actions fulfilled the purposes of

the TCPA by protecting consumers and businesses from unsolicited faxes and ensuring that fax advertisers provide effective opt-out mechanisms. Requiring strict compliance with the technical details of opt-out notice rules does nothing to protect consumers. Instead, such a rigid interpretation exposes legitimate enterprises who acted in good faith to potentially staggering levels of statutory damages based on minor technical faults.

**III.    MEDLEARNING AND MEDICA SHOULD BE GRANTED A WAIVER.**

In the alternative to the above requests, the petitioners respectfully request that the Commission waive strict compliance Sections 64.1200(a)(4)(iii) and (iv) with respect to the MedLearning and Medica faxes discussed herein. The Commission should grant a waiver where, as here, "[t]he underlying purpose of the rule(s) would not be served" or the factual circumstances mandate a waiver to avoid application of the rule that would be "inequitable, unduly burdensome or contrary to the public interest." 47 C.F.R. § 1.925(b)(3)(i)-(ii). See also 47 C.F.R. § 1.3 (the Commission may waive any provision of its rules "for good cause shown" when it concludes that a waiver would serve the public interest, considering all relevant factors).

The stated purpose of the Rule is to allow consumers to stop unwanted faxes in the future. This purpose is not served where entities such as MedLearning and Medica are subjected to massive liability on the basis of faxes sent with the express permission of the recipients and where those recipients could have easily, and without cost, opted out of future communications. A waiver would serve the public interest by avoiding an abuse of the private right of action created by the TCPA, as an allegedly minor technical defect should

not be a basis for serial TCPA-class action plaintiffs, such as Kaye and Physicians Healthsource, to institute expensive and time-consuming litigation, exposing businesses, such as the present petitioners, to millions of dollars in liability.

## CONCLUSION

For the reasons stated above, the Commission should issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of the Commission's regulations does not apply to solicited faxes, or, alternatively, that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b). At a minimum, the Commission could clarify that solicited faxes sent with effective opt-out notices do not violate the Rule or any other regulation promulgated by the Commission under the TCPA.

Finally, if the Commission declines to issue the requested declaratory rulings, the Commission should grant MedLearning and Medica a waiver of Sections 64.1200(a)(4)(iii) and (iv) of the Commission's rules under the circumstances described herein.

Respectfully submitted,

MedLearning, Inc. and Medica, Inc.

BY: /s/ Matthew H Geelan
　　　Matthew H. Geelan
　　　Donahue, Durham & Noonan, P.C.
　　　741 Boston Post Road
　　　Guilford, CT 06437
　　　(203) 458-9168

　　　*Counsel for MedLearning, Inc.*
　　　*and Medica, Inc.*

Before the
## FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of | ) |
| | )    CG Docket No. 02-278 |
| Petition of UnitedHealth Group Incorporated | ) |
| for Declaratory Ruling and/or Waiver of | )    CG Docket No 05-338 |
| Section 64.1200(a)(4)(iv) of the | ) |
| Commission's Rules | ) |

## PETITION OF UNITEDHEALTH GROUP INCORPORATED
## FOR DECLARATORY RULING AND/OR WAIVER

Pursuant to Sections 1.2 and 1.3 of the Federal Communications Commission's ("Commission") rules,[1] UnitedHealth Group Incorporated and its affiliates and subsidiaries (collectively, "UHG") respectfully requests that the Commission issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of its rules, 47 C.F.R. § 64.1200(a)(4)(iv), does not apply to facsimile advertisements sent with the recipient's "prior express invitation or permission" ("solicited faxes"). Such an interpretation is consistent with the plain language of the Telephone Consumer Protection Act ("TCPA"), as codified in 47 U.S.C. § 227 and amended by the Junk Fax Prevention Act of 2005 ("JFPA"),[2] and avoids an interpretation that would render the rule unlawful under administrative law principles. Alternatively, the Commission should issue a declaratory ruling clarifying that the statutory basis for implementing Section 64.1200(a)(4)(iv) is not Section 227(b) of the Communications Act, 47 U.S.C. § 227(b). These clarifications would help prevent lawsuits that unfairly target organizations that have sent

---

[1] 47 C.F.R. §§ 1.2, 1.3.

[2] *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991); Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005). The TCPA and the JFPA are codified at 47 U.S.C. § 227.

solicited faxes in good faith.  Such lawsuits also waste judicial resources on resolving claims that Congress never intended to create.

      If the Commission declines to issue either of the requested declaratory rulings, UHG respectfully requests that the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) for any solicited fax sent by UHG (or on its behalf) after the effective date of the regulation.  No real purpose is served by enforcing Section 64.1200(a)(4)(iv) with respect to recipients who have already provided "prior express invitation or permission."  In contrast, the public interest would be harmed by requiring parties like UHG to divert substantial resources and staff away from productive health care efforts to resolve unnecessary litigation efforts stemming from confusion over the Commission's regulations.

      As a final matter, to the extent that the Commission determines that any declaratory ruling, waiver, or other relief[3] may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient with whom the sender has an "established business relationship," UHG respectfully requests that it be granted such relief on the bases described in this petition.

## I.    BACKGROUND

      The TCPA, as codified in 47 U.S.C. § 227 and amended by the JFPA, prohibits, under certain circumstances, the use of a fax machine to send an "unsolicited advertisement."[4]  An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."[5]  The JFPA expressly applies only to unsolicited faxes, and not

---

[3] *See infra* note 18 (referencing the FCC public notices associated other similar filings).
[4] 47 U.S.C. §§ 227(a)(5) and (b)(1)(C).
[5] *Id.* at § 227(a)(5) (emphasis added).

to all faxes.[6]  Accordingly, the TCPA's general prohibition against faxes does not apply to solicited faxes, *i.e.* faxes sent with the recipient's "prior express invitation or permission."

The Commission adopted rules implementing the JFPA.[7]  Even though the JFPA expressly applies only to unsolicited faxes, the Commission adopted a rule, Section 64.1200(a)(4)(iv), purporting to impose opt-out notice requirements on solicited faxes.[8]

Since the adoption of Section 64.1200(a)(4)(iv), various plaintiffs have seized on the ambiguity of this rule to bring numerous class action lawsuits under Section 227(b) of the TCPA.[9]  Such lawsuits have been brought against companies acting in good faith for engaging in communications for which the fax recipients had provided "prior express invitation or permission," had an established business relationship, or both.  Many of these class action lawsuits seek millions of dollars in damages.

UHG is currently subject to a class-action lawsuit based on alleged violations of the TCPA's fax provisions.[10]  That case arose after UHG sent a one-page solicited fax advertisement to the plaintiff.  Although it was a solicited fax and the parties had a contractual relationship,[11] the plaintiff argues that UHG should have provided an opt-out notice.[12]

---

[6] *See generally* the JFPA.

[7] *See generally Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) ("*JFPA Order*").

[8] *See* 47 C.F.R. § 64.1200(a)(4)(iv).  Originally, the rule was codified at 47 C.F.R. § 64.1200(a)(3)(iv) but was subsequently renumbered.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 FCC Rcd 1830 (2012).

[9] 47 U.S.C. § 227(b)(3)(A)-(C).

[10] *See Meinders v. UnitedHealthcare, Inc., et al.*, No. 3:14-cv-00548-DRH-DGW (N.D. Ill.).

[11] The parties to the litigation dispute, *inter alia*, whether the fax was solicited.  However, it is not necessary for the Commission to resolve that dispute in acting on this petition.  The disputed factual issues in the case will be resolved by the court and do not impact the issues raised in this petition.

[12] *See* Class Action Complaint, *Meinders v. UnitedHealthcare, Inc., et al.*, No. 3:14-cv-00548-DRH-DGW ¶ 2 (N.D. Ill.).

The issue of whether Section 64.1200(a)(4)(iv) applies to solicited faxes was the subject of a recent Eighth Circuit Court of Appeals decision, *Nack v. Walburg*.[13]  In *Nack*, the Eighth Circuit recognized that "it is questionable whether the regulation at issue (thus interpreted) properly could have been promulgated under the statutory section that authorizes a private cause of action," but the court found that the Administrative Orders Review Act (*i.e.* the Hobbs Act)[14] precluded it from holding the regulation invalid outside of the statutory procedure mandated by Congress.[15]  The court, however, indicated that the defendants in *Nack* might obtain relief from the Commission.[16]  Subsequently, the defendants in that case moved to stay the litigation and filed a Petition for Declaratory Ruling and/or Waiver with the Commission.[17]  Other parties have followed suit.[18]  Consistent with the concerns raised in those petitions, UHG similarly requests that the Commission issue a declaratory ruling clarifying Section 64.1200(a)(4)(iv) or, in the alternative, grant UHG a retroactive waiver of Section 64.1200(a)(4)(iv), as explained herein.

## II.   DISCUSSION

### A.   The Commission Should Clarify That Section 64.1200(a)(4)(iv) Does Not Apply to Faxes Sent With the "Prior Express Invitation or Permission" of the Recipient.

The Commission should issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) does not apply to solicited faxes for the following reasons: (i) the plain language of Section 64.1200(a)(4)(iv) and the Commission order implementing the rule is unclear with respect to the rule's scope and applicability, but the TCPA is clear that the

---

[13] 715 F.3d 680 (8th Cir. 2013).

[14] 28 U.S.C. § 2342 *et seq.*

[15] 715 F.3d at 682.

[16] *Id.* at 687.

[17] Petition of Douglas Paul Walburg and Richie Enterprises, LLC for Declaratory Ruling and/or Waiver, CG Docket Nos. 02-278 and 05-338 (filed Aug. 19, 2013).

[18] *See, e.g., Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements,* Public Notice, CG Docket Nos. 02-278 and 05-338, DA 14-923 (rel. June 27, 2014); Public Notice, DA 14-734 (rel. May 30, 2014); Public Notice, DA 14-556 (rel. Apr. 25, 2014); Public Notice, DA 14-416 (rel. Mar. 28, 2014); Public Notice, DA 14-120 (rel. Jan. 31, 2014).

4

prohibitions specified in the statute apply only to unsolicited faxes; (ii) applying Section 64.1200(4)(iv) to faxes sent with the "prior express invitation and permission" of the recipient exceeds the Commission's authority; and (iii) interpreting Section 64.1200(a)(4)(iv) to apply to solicited faxes raises significant First Amendment concerns.

        **1.**      **The plain language of Section 64.1200(a)(4)(iv) and the Commission's implementing order is unclear in its scope and applicability; excluding solicited faxes is consistent with the express statutory language of the TCPA.**

Section 64.1220(a)(4)(iv) is unclear and cannot be interpreted in an internally consistent manner. In relevant part, the rule states:[19]

> No person or entity may: ... [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless – (i) The unsolicited advertisement is from a sender with an established business relationship .... (iv) A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section.

Thus, on its face, the rule creates uncertainty by its own lack of clarity, confusing sentence structure, and conflicting language.

The Commission's implementing order itself is also confusing. On the one hand, the *JFPA Order* states the "opt-out notice requirement only applies to communications that constitute <u>unsolicited</u> advertisements."[20] On the other hand, the *JFPA Order* states that "entities that send facsimile advertisements to consumers <u>from whom they obtained permission must include on the advertisements their opt-out notice</u>."[21] Accordingly, it is impossible to discern definitively whether Section 64.1200(a)(4)(iv) is intended to reach solicited faxes.

---

[19] 47 C.F.R. § 64.1200(a)(4).
[20] *JFPA Order* ¶ 42 n. 154 (emphasis added).
[21] *Id.* ¶ 48 (emphasis added).

In contrast, the language of the TCPA is clear that the statute applies only to unsolicited advertisements.[22] Further, nothing in the legislative history of the TCPA indicates that Congress intended to apply such requirements to faxes sent with the recipient's "prior express invitation or permission."[23] Similarly, the Commission did not indicate in its Notice of Proposed Rulemaking that it was considering adopting opt-out notice requirements with respect to solicited faxes.[24] Accordingly, the Commission should clarify that Section 64.1200(a)(4)(iv) does not apply to solicited faxes.

### 2.   The Commission lacks the statutory authority to apply Section 64.1200(a)(4)(iv) to solicited faxes.

Congress has spoken directly to the question of whether a solicited fax must contain an opt-out notice by limiting Section 227(b) of the TCPA to unsolicited advertisements.[25] By doing so, Congress restricted the Commission's jurisdiction to that particular type of communication. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[26] Indeed, the Commission itself recognized that the TCPA's scope is limited to unsolicited fax

---

[22] *See, e.g.*, 47 U.S.C. § 227(a)(5) (defining "unsolicited advertisement"); *id.* § 227(b)(1)(C) (prohibiting the use of a device to send an "unsolicited advertisement"); *id.* § 227(b)(1)(C)(iii) (creating an exception for "unsolicited advertisements" containing an appropriate notice requirement).

[23] *See, e.g.*, S. Rep. No. 102-178 at 3 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970; S. Rep. No. 109-76 at 1 (2005), reprinted in 2005 U.S.C.C.A.N. 319.

[24] *See generally Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, Notice of Proposed Rulemaking and Order, 20 FCC Rcd 19758 (2005).

[25] *See supra* note 22.

[26] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also, e.g., Utility Air Regulatory Group v. Environmental Protection Agency*, 134 S. Ct. 2427 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms."); *Am. Library Ass'n v. FCC*, 406 F.3d 689, 705 (D.C. Cir. 2005) ("[T]he Commission can only issue regulations on subjects over which it has been delegated authority by Congress."); *ACLU v. FCC*, 823 F.2d 1554, 1571 (D.C. Cir. 1987) (where Congress has addressed a question with a "specific statutory provision," the Commission lacks the authority to establish a contrary regulation on the same subject).

advertisements.[27]  Accordingly, the Commission should issue a declaratory ruling clarifying that

it lacks the statutory authority to apply Section 64.1200(a)(4)(iv) to solicited faxes.

### 3. Applying Section 64.1200(a)(4)(iv) to solicited faxes raises significant First Amendment concerns.

The Supreme Court has made clear that truthful commercial speech may be burdened

only where the government can show that the proposed restriction directly advances a substantial

government interest and that the regulation "is not more extensive than is necessary to serve that

interest."[28]  Application of Section 64.1200(a)(4)(iv) to solicited faxes fails to meet this standard.

Courts applying that test to unsolicited faxes under Section 227(b) have upheld the

Commission's requirements by recognizing "a substantial interest in restricting unsolicited fax

advertisements in order to prevent the cost shifting and interference such unwanted advertising

places on the recipient."[29]  But, as the Eighth Circuit acknowledged in *Nack*, that interest is

simply not present in the context of solicited faxes.[30]  Indeed, in the *JFPA Order*, the

Commission identified no governmental interest for adoption of a rule requiring an opt-out

notice for solicited fax advertisements, demonstrated no advancement of any government

interest, and provided no reasons why a less restrictive rule would not suffice.  For these reasons,

the Commission should clarify that the scope of Section 64.1220(a)(4(iv) does not apply to

solicited fax advertisements.

---

[27] *See, e.g., JFPA Order* ¶ 1 ("[W]e amend the Commission's rules on unsolicited facsimile advertisements as required by the" JFPA); *id.* ¶ 2 ("[T]he TCPA prohibits the use of any telephone facsimile machine ... to send an 'unsolicited advertisement.'"); *id.* ¶ 7 ("On December 9, 2005, the Commission released a Notice of Proposed Rulemaking proposing modifications to the Commission's rules on unsolicited facsimile advertisements to implement the amendments required by the" JFPA.).

[28] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

[29] *Missouri v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003).

[30] *See Nack*, 715 F.3d at 687 ("[T]he analysis and conclusion as set forth in *American Blast Fax* would not necessarily be the same if applied to the agency's extension of authority over solicited advertisements."); *see also* H.R. Rep. No. 102-317, 1991 WL 245201, at *10 (1991) (recognizing concerns regarding restrictions on commercial speech).

7

**B.**   <u>Alternatively, the Commission Should Clarify that the Statutory Basis of Section 64.1200(a)(4)(iv) Is Not 47 U.S.C. § 227(b).</u>

If the Commission declines to issue the declaratory ruling requested in Part I.A. above, the Commission should issue a declaratory ruling clarifying that Section 227(b) of the Communications Act is not the statutory basis for Section 64.1200(a)(4)(iv). Such a declaration would provide clarity on the basis for this rule section and the Commission's authority to apply it. Moreover, the declaratory ruling would clarify for courts and potential litigants that fax advertisements sent with the recipient's "prior express invitation or permission" do not provide a basis for a private action under the TCPA. This clarity would be particularly helpful given that the Commission cited eleven statutory provisions in the *JFPA Order* as the basis for the numerous amendments made to Section 64.1200, but failed to specify the statutory basis for Section 64.1200(a)(4)(iv).[31]

By clarifying that Section 64.1200(a)(4)(iv) is not grounded in the Commission's authority under Section 227(b), the Commission has the opportunity to ensure fair treatment for businesses acting in good faith that would otherwise be subject to potentially devastating class action lawsuits based merely on sending faxes to willing recipients who already have provided "prior express invitation or permission."[32] Without the requested clarification, courts will be left to guess at the Commission's jurisdictional authority, injecting greater uncertainty into the many pending lawsuits that have arisen as a result of the ambiguity of Section 64.1200(a)(4)(iv) and potentially depriving defendants of a valid defense.

---

[31] *See JFPA Order* ¶ 64 (adopting order "pursuant to the authority contained in sections 1-4, 201, 202, 217, 227, 258, 303(r), and 332 of the Communications Act of 1934, as amended").

[32] *Cf. Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 (D.C. Cir. 1977) (requiring agencies to articulate the basis for their rules can "assist judicial review" and help to ensure "fair treatment for persons affected by rule.").

**C.**     **Alternatively, the Commission Should Grant a Retroactive Waiver of Section 64.1220(a)(4)(iv) for Any Solicited Fax Sent by UHG or on its Behalf.**

If the Commission declines to issue either of the declaratory rulings requested in this petition, UHG respectfully requests that the Commission nonetheless grant a retroactive waiver of Section 64.1200(a)(4)(iv) for any solicited fax sent by UHG (or on its behalf) after the effective date of the regulation. Section 1.3 of the Commission's rules permits the Commission to grant a waiver if good cause is shown.[33] Generally, the Commission may grant a waiver of its rules in a particular case if the relief requested would not undermine the policy objective of the rule in question and would otherwise serve the public interest.[34] Furthermore, waiver is appropriate if special circumstances warrant a deviation from the general rule and such deviation would better serve the public interest than would strict adherence to the general rule.[35]

A grant of the requested waiver is in the public interest. The TCPA and the Commission's TCPA rules are intended "to allow consumers to stop unwanted faxes."[36] That purpose is not served where, as here, the recipient of the fax already had given permission to UHG to send a fax advertisement, and importantly, was fully capable of contacting UHG for purposes of opting out of future fax communications. Additionally, as discussed above, in light of the lack of clarity regarding the scope and applicability of Section 64.1200(a)(4)(iv) and its questionable legal foundation, grant of the waiver would better serve the public interest than strict adherence to the rule.

Moreover, denial of the waiver would be inequitable and could impose unfair liability on UHG based on claims that Congress never intended to create. Furthermore, the public interest would be harmed by requiring parties like UHG to divert substantial resources and staff away

---

[33] 47 C.F.R. § 1.3.
[34] *See WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969).
[35] *See Ne. Cellular Tel. Co. v. FCC*, 897 F. 2d 1164, 1166 (D.C. Cir. 1990).
[36] *JFPA Order* ¶ 48.

from productive health care efforts to resolve unnecessary litigation efforts stemming from confusion over the Commission's regulations.  Similarly, the Commission should seek to disincentivize parties from abusing the Commission's rules for private gain.  For these reasons, UHG submits that the public interest would be served by the Commission's grant of the requested waiver.

As a final matter, to the extent that the Commission determines that a similar declaratory ruling, waiver, or other relief may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient with whom the sender has an established business relationship, UHG respectfully requests that it be granted such relief on the bases described in this petition.

## III.    <u>CONCLUSION</u>

For the reasons stated above, UHG respectfully requests that the Commission issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of the Commission's rules does not apply to solicited faxes.  In the alternative, UHG respectfully requests that the Commission clarify that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b).  In the event the Commission declines to issue either declaratory ruling sought in this petition, UHG respectfully requests that the Commission nonetheless grant UHG a retroactive waiver of Section 64.1200(a)(4)(iv) for any solicited fax sent by UHG (or on its behalf) after the effective date of the regulation.

Respectfully submitted,

*/s/Mark W. Brennan*

Mark W. Brennan
Tony Lin
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC  20004
*Counsel to UnitedHealth Group Incorporated*

July 11, 2014

10

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, DC 20554**

| | |
|---|---|
| In the Matter of: | ) |
| | ) CG Docket No. 02-278 |
| Petition of Merck & Company, Inc. | ) |
| for Declaratory Ruling to Clarify Scope and/or | ) CG Docket No. 05-338 |
| Statutory Basis for Rule 64.1200(a)(4)(iv) | ) |
| and/or for Waiver | ) |

## PETITION FOR DECLARATORY RULING AND/OR WAIVER

Kim E. Rinehart
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, Connecticut  06508-1832
(203) 498-4400
(203) 782-2889 fax
krinehart@wiggin.com

*Counsel for Merck & Company, Inc.*

Dated: July 11, 2014

## <u>EXECUTIVE SUMMARY</u>

Pursuant to Section 1.2 of the Federal Communications Commission ("Commission" or "FCC") rules, Merck & Company, Inc. ("Merck" or "Petitioner") respectfully requests that the Commission issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) (the "Rule") of the Commission's regulations does not apply to fax advertisements sent with the prior express consent or permission of the recipient ("solicited faxes"). In the alternative, Petitioner respectfully requests that the Commission clarify that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b). At a minimum, the Commission should clarify that solicited faxes sent with effective opt-out notices do not violate the Rule or any other regulation promulgated by the Commission under the TCPA.

If the Commission declines to issue the requested declaratory rulings, Petitioner respectfully requests that, pursuant to Section 1.3 of the FCC's rules, the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) with respect to faxes that have been transmitted by or on behalf of Merck with the prior express consent or permission of the recipients or their agents.

## TABLE OF CONTENTS

EXECUTIVE SUMMARY ......................................................................................... i

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT .............................................................................................................. 4

I.    The Commission Should Clarify that Section 64.1200(a)(4)(iv) Does Not Apply to
       Faxes Sent with the Consent of the Recipient ...................................................... 4

       A.   Section 64.1200(a)(4)(iv) and the Commission's Implementing Order Are
             Unclear In Scope and Applicability. ........................................................... 4

       B.   Applying Section 64.1200(4)(iv) to Faxes Sent with Consent Would Exceed the
             Commission's Authority Under the TCPA. .................................................. 7

       C.   Interpreting the Provision to Apply to Solicited Faxes Would Raise Significant
             Constitutional Concerns. ............................................................................ 10

II.   Alternatively, the Commission Should Clarify that the Statutory Basis of Section
       64.1200(a)(4)(iv) Is Not 47 U.S.C. § 227(b) ..................................................... 12

III.  The Commission Should Confirm that Substantially Compliant Opt-Out Notices on
       Solicited Faxes Satisfy Sections 64.1200(a)(4)(iii) and (iv) of the Commission's
       Rules .................................................................................................................. 13

IV.   Alternatively, Merck Should Be Granted a Waiver .............................................. 16

CONCLUSION ........................................................................................................ 17

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, DC 20554**

| | |
|---|---|
| In the Matter of: | ) |
| | ) CG Docket No. 02-278 |
| Petition of Merck & Company, Inc. | ) |
| for Declaratory Ruling to Clarify Scope and/or | ) CG Docket No. 05-338 |
| Statutory Basis for Rule 64.1200(a)(4)(iv) | ) |
| and/or for Waiver | ) |

## PETITION FOR DECLARATORY RULING AND/OR WAIVER

### INTRODUCTION

Merck & Company, Inc. ("Merck" or "Petitioner"), a pharmaceutical manufacturer, is subject to a putative class action lawsuit based on the sending of solicited faxes that contained an effective opt-out notice. While these solicited faxes harmed no one, the plaintiff in that lawsuit seeks millions of dollars on behalf of the putative class, claiming that Merck has violated Section 64.1200(a)(4)(iv) of the Commission's rules (the "Rule") because the opt-out language on the faxes allegedly was not fully compliant with the Rule's requirements.

47 U.S.C. § 227(b) codifies, in part, the Telephone Consumer Protection Act, as amended ("TCPA"). The plain language and scope of Section 227(b) is expressly limited to unsolicited faxes, which the statute defines to exclude faxes sent with consent. Thus, no regulation adopted under Section 227(b) properly could extend to solicited faxes.

Nevertheless, the Rule contains confusing and inconsistent language regarding opt-out notice requirements, such that its scope and applicability are unclear. This uncertainty has led to legal disputes, numerous petitions filed with the Commission, and confusion regarding application of the Rule's opt-out notice requirements. Accordingly, consistent with the TCPA's

1

text and legislative history, Merck urges the Commission to resolve this uncertainty by clarifying that Section 64.1200(a)(4)(iv) does not apply to solicited fax advertisements.

Alternatively, Merck requests that the Commission issue a declaratory ruling that Section 227(b) of the Communications Act is not the statutory basis for Section 64.1200(a)(4)(iv). Such a ruling would clarify the Commission's authority for this Rule section while making clear that solicited faxes sent without the precise opt-out notification language requirements listed in the Rule cannot form the basis of a private action under the TCPA.

Should the Commission decline to issue the declaratory rulings sought above, the Commission at least should clarify that a fax that is transmitted pursuant to the prior express invitation or permission of a fax recipient, and includes an effective opt-out notice, does not violate any Commission regulation promulgated pursuant to Section 227(b)(2)(D) or another provision of the TCPA.

Finally, in the absence of any of the declaratory rulings requested above, Merck requests that the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) from the effective date of the Rule for any fax transmitted by or on behalf of Merck with consent.

## BACKGROUND

Merck is presently defending a lawsuit brought by a serial TCPA-class action plaintiff. *See Kaye v. Merck & Co., Inc.*, 3:10cv1546 (RNC) (D. Conn., filed Sept. 29, 2010).[1] The single fax appended to plaintiff's complaint was addressed to the plaintiff, Roger Kaye, a physician, by name, and invited him to attend an interactive telesymposium on "important clinical information about schizophrenia and bipolar disorder."[2] At the bottom of the first and

---

[1] The case technically features two plaintiffs: Roger H. Kaye and Roger H. Kaye, MD PC. Merck refers to the plaintiffs collectively as "Kaye" or "plaintiff."

[2] Merck denies that the fax at issue constitutes an advertisement under the TCPA.

only page of the fax appeared the following statement:  "To be removed from the fax list for this program, please initial here __ and fax this form back to (207) 288-2307 or call (877) 963-3532."  Kaye does not allege that he received any other faxes or that he attempted to utilize the opt-out mechanism without success.

Merck's co-defendant, MedLearning, Inc. ("MedLearning"), conducted outreach to physicians who were invited to the telesymposium.    MedLearning placed a personal phone call to each invitee.  MedLearning conducted a careful process to ensure consent before sending any fax.  Notwithstanding this careful consent process, Merck and MedLearning have been subject to a class action lawsuit seeking millions of dollars in damages.    Kaye's primary theory of liability in the case is that the Commission's Rule requires an extensive opt-out notice on every fax, even where express consent was obtained prior to sending.[3]  Thus Merck and MedLearning face a lawsuit even though the harm to recipients of the faxes—who Merck contends expressly agreed to receive them— is nonexistent.

The district court in *Kaye* has phased discovery, prioritizing precertification discovery on the issue of whether the subject telesymposia faxes were solicited or unsolicited.[4]  The court has stayed additional discovery or proceedings in the case, pending the completion of the initial round of discovery and/or "the outcome of proceedings before the Federal Communications Commission concerning the Commission's regulation of solicited faxes under the TCPA."[5]  Before ordering the partial stay, the court expressed serious concern about the application of the opt-out notice requirements to solicited faxes.[6]

---

[3] Plaintiffs in *Kaye* have also pled a class of alleged recipients of "unsolicited" faxes.
[4] *Kaye*, 3:10cv1546, Order at 1 (doc. # 114, Jan. 26, 2014); *id.*, Order at 7 (doc. # 126, May 15, 2014) (adhering to Order of Jan. 26, 2014).
[5] *Id.*, Order at 1 (doc. # 114, Jan. 26, 2014).  The Court also stayed those additional proceedings pending the result the certiorari petition in the U.S. Supreme Court in *Nack v. Walburg*, 715 F.3d

3

## ARGUMENT

I.    **The Commission Should Clarify that Section 64.1200(a)(4)(iv) Does Not Apply to Faxes Sent with the Consent of the Recipient.**

The Commission should issue a declaratory ruling clarifying that Section

64.1200(a)(4)(iv) does not apply to solicited faxes for the following reasons: (i) the Rule and the

Commission order implementing the Rule are ambiguous with respect to the provision's scope

and applicability; (ii) applying Section 64.1200(4)(iv) to faxes sent with the consent of the

recipient would exceed the Commission's authority under the Communications Act; and (iii)

interpreting the provision to apply to solicited faxes would raise significant constitutional

concerns.

### A.    Section 64.1200(a)(4)(iv) and the Commission's Implementing Order Are Unclear In Scope and Applicability.

The Commission should interpret Section 64.1200(a)(4)(iv) to apply only to

unsolicited faxes because the language of the Rule is unclear in its scope, and excluding solicited

faxes best comports with Congress's intent to regulate *unsolicited* faxes.  The Rule provides, in

pertinent part:

> No person or entity may: …
>
> Use a telephone facsimile machine, computer, or other device
> to send an unsolicited advertisement to a telephone facsimile
> machine, unless – …
>
> A facsimile advertisement that is sent to a recipient that has

---

680 (8th Cir. 2013), *petition for cert. filed* (U.S. Oct. 15, 2013).  Since the Court's preliminary Order on January 26, 2014 (subsequently adhered to by Order dated May 15, 2014), the Supreme Court denied certiorari in *Nack. See Nack v. Walburg*, No. 13-486, 2014 WL 1124926 (U.S. Mar. 24, 2014).

[6] *Kaye*, 3:10cv1546, Teleconference of Jan. 21, 2014, Tr. at 9:19-22 ("I think the FCC might very well have exceeded the scope of its authority and arrogated to itself a power to regulate, that [] wasn't conferred on it by Congress.").

4

> provided prior express invitation or permission to the sender
> must include an opt-out notice that complies with the
> requirements in paragraph a(4)(iii) of this section.[7]

Given the punctuation and varied sentence structure of the rule, the plain text of Section

64.1200(a)(4)(iv) does not make sense as drafted.  Because the Rule contains references to both

unsolicited faxes and faxes sent with consent, it is impossible to tell whether the Rule is intended

to reach solicited as well as unsolicited faxes.[8]

   The *JFPA Order* is equally confusing.  The Order first explains that "the opt-out notice

requirement only applies to communications that constitute unsolicited advertisements."[9]  Only

later, in a paragraph dealing with the issue of faxes sent based on consent received prior to the

effective date of the rules, does the Order state that an opt-out notice would be required "to allow

consumers to stop unwanted faxes in the future."[10]  A reasonable interpretation of this provision

is that, to the extent any opt-out notice requirement was intended by the Commission to apply to

faxes sent with consent, it was intended to apply only where that consent was obtained prior to

the effective date of the rules.  In any event, given these ambiguities and contradictions, there is

legitimate uncertainty regarding whether Section 64.1200(a)(4)(iv) applies to solicited faxes.

---

[7] 47 C.F.R. § 64.1200(a)(4)(iv).

[8] Indeed, until recently, the majority of court decisions had concluded that the TCPA and its
implementing regulations reached only unsolicited faxes: *See, e.g., Fricko Inc. v. Novi Brs
Enters.*, No. 10-10626, 2011 WL 2079704, at *2 (E.D. Mich. May 25, 2011) ("liability exists
under the TCPA only if the transmissions were unsolicited"); *Miller v. Painters Supply & Equip.
Co.*, 2011 Ohio 3976 ¶¶ 19-21 (Ohio 8th DCA 2011) ("[P]laintiffs seek to put the proverbial cart
before the horse . . . .  [T]he opt-out notice requirements do not come into play unless it is first
shown that unsolicited fax advertisements were sent.") (citing *Nack* with approval); *Fackelman
v. Micronix*, 2012 Ohio 5513 ¶¶ 13, 16 (Ohio 8th DCA Nov. 29, 2012) (holding that the
Regulation applies only to unsolicited fax advertisements; *see also Clearbrook v. Rooflifters,
LLC*, No. 08C3276, 2010 WL 2635781, at *4 (N.D. Ill. June 28, 2010) ("there is little case law to
support the theory that a plaintiff can proceed with a TCPA claim when he or she has explicitly
consented to the fax advertisement.").

[9] JFPA Order ¶ 42 n.154.

[10] *Id.* at ¶ 48.

The Commission should end this uncertainty and make clear that Section 64.1200(a)(4)(iv) does not apply to fax advertisements that were sent with the prior express consent of the recipient, as that interpretation best accords with the text and history of the TCPA.

The TCPA's opt-out requirements apply only to "unsolicited advertisement[s]," the definition of which expressly excludes any fax advertisement sent with the recipient's "prior express invitation or permission."[11] Likewise, the legislative history of the original TCPA enactment makes clear that the purpose of the Act was to address the problem of "*unsolicited*" fax advertisements.[12] And the legislative history of the JFPA is no different, showing that Congress meant only to "[c]reate a limited [EBR] statutory exception to the current prohibition against the faxing of unsolicited advertisements," and for those "unsolicited advertisements," to require "notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements."[13] There is no indication whatsoever that Congress was concerned about communications between businesses and their consenting customers.   It is thus unsurprising that the Commission never provided notice, in its notice of proposed rulemaking or elsewhere, that it was even considering applying any regulations to solicited faxes.  Accordingly, the Commission should interpret Section 64.1200(a)(4)(iv) to apply only to unsolicited faxes.

---

[11] 47 U.S.C. § 227(b)(1)&(2); *id.* § 227(a)(5).

[12]  S. Rep. No. 102-178 at 3 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970 ("The bill as introduced proposed to ban artificial or prerecorded messages to residential consumers and to emergency lines, and to place restrictions on unsolicited advertisements delivered via fax machine.").

[13] S. Rep. No. 109-76 at 1 (2005), reprinted in 2005 U.S.C.C.A.N. 319, 319.

**B.      Applying Section 64.1200(4)(iv) to Faxes Sent with Consent Would Exceed the Commission's Authority Under the TCPA.**

As discussed above, Section 227(b)(1) makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited advertisement*" unless certain requirements are met, including that the sender has an established business relationship with the recipient and the fax displays an opt-out notice meeting the statutory criteria.[14] The TCPA explicitly defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*."[15] By its terms, then, the statutory restrictions — including the opt-out-notice requirement — do not apply to any faxes sent *with* the recipient's prior express invitation or permission.

Supreme Court precedent is clear that agencies may not exercise authority in a manner that is inconsistent with the administrative structure that Congress enacted into law.  In *FDA v. Brown & Williamson Tobacco Corp.*,[16] the Supreme Court held that the Food and Drug Administration's ("FDA") assertion of jurisdiction over tobacco products was impermissible in light of Congress's clear intent as expressed in the Food, Drug, and Cosmetics Act ("FDCA").[17]  The Court affirmed that "although agencies are generally entitled to deference in the interpretation of statutes that they administer, a reviewing 'court, as well as the agency,

---

[14] 47 U.S.C. § 227(b)(1)(C) (emphasis added).
[15] § 227(a)(5) (emphasis added).
[16] 529 U.S. 120 (2000).
[17] *Id.* at 126.

7

must give effect to the unambiguously expressed intent of Congress.'"[18] "Regardless of how serious the problem an administrative agency seeks to address . . . it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law."[19]

The *Brown & Williamson* Court concluded that the FDCA's overall regulatory scheme and subsequent tobacco-specific legislation showed Congress's clear intent to preclude the FDA from regulating tobacco products. "A fundamental precept of the FDCA is that any product regulated by the FDA—but not banned—must be safe for its intended use."[20] Among other problems, the Court ruled that the FDA's conception of "safety" was implausible because it required reading "any probable benefit to health" to include "the benefit to public health stemming from adult consumers' continued use of tobacco products, even though the reduction of tobacco use is the *raison d'être* of" the challenged regulations.[21] To find that the FDA had authority to regulate tobacco products, the Court would have had to adopt an understanding of "safety" that included outcomes that were not safe—what the Court called "an extremely strained understanding of 'safety' as it is used throughout the" FDCA.[22]

*MCI Telecommunications Corp. v. AT&T Co.*, 512 U.S. 218 (1994) involved the proper construction of the term "modify" in § 203(b) of the Communications Act of 1934. The Commission contended that, because the Act gave it the discretion to "modify any requirement" imposed under the statute, it therefore possessed the authority to render

---

[18] *Id.* at 125-26 (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984)).
[19] *Id.* at 125 (internal quotations omitted).
[20] *Id.* at 142.
[21] *Id.* at 120.
[22] *See id.* at 160.

voluntary the otherwise mandatory requirement that long distance carriers file their rates.[23]
The Supreme Court disagreed, finding "not the slightest doubt" that Congress had spoken
directly on the question.[24]

The Court rejected the Commission's construction of the statute because, among other
things, the Commission's preferred definition of the word "modify" as including "make a basic
or important change in," contradicted contextual indications of the statue, which supported a
definition of "modify" that carried a connotation of "increment or limitation."[25]   After
analyzing how the Commission's proposed definition contradicted one of the alternative
meanings in the same dictionary to which the Commission pointed, the Court observed

> When the word "modify" has come to mean both "to change in some respects"
> and "to change fundamentally" it will in fact mean neither of those things.  It
> will simply mean "to change," and some adverb will have to be called into
> service to indicate the great or small degree of the change.[26]

*MCI* rejected the Commission's interpretation of the statute because it went beyond the
meaning that the statute could bear.[27]

*Brown & Williamson* and *MCI* are instructive to the issue at hand.  Both cases employ
a common sense interpretation of legislative words.  In *Brown & Williamson*, the FDA was
not permitted to interpret "safe" to include "unsafe."  Here, the Commission should not have
interpreted "unsolicited" to include "solicited."  Relying on the Court's analysis in *MCI*, if the
definition of "unsolicited" includes both "unsolicited" and "solicited," it will mean neither of
those things, and the TCPA will simply proscribe sending any advertisement via facsimile
transmission. Congress was mindful of the limitations on regulating free speech and

---

[23] *Id.* at 225.
[24] *Id.* at 228.
[25] *Id.* at 225-26.
[26] *Id.* at 227.
[27] *See id.* at 229, 232, 234.

commercial speech, and privacy concerns, when it passed the TCPA in 1991 and the Junk Fax

Prevention Act in 2005, however, and asserted no interest in regulating solicited faxes.[28]

Accordingly, the Commission did not obtain the authority to regulate solicited faxes when

Congress passed a statute regulating unsolicited faxes. Thus, the Rule is invalid to the extent it

purports to regulate solicited faxes and is promulgated pursuant to the Commission's authority

under Section 227. The Commission should construe the Rule to avoid these problems.

### C.   Interpreting the Provision to Apply to Solicited Faxes Would Raise Significant Constitutional Concerns.

Imposing an opt-out notice requirement on consensual communications between fax

senders and recipients raises serious First Amendment concerns. In addition, assessing

potentially massive statutory damages based on alleged technical deficiencies in such notices,

under circumstances where the recipient has expressly invited or consented to the fax, raises

substantial Due Process concerns. Accordingly, the Rule should be interpreted in a manner to

avoid these constitutional problems.

It is unlikely that Congress or the Commission could validly impose extensive opt-

out requirements on solicited faxes consistent with the First Amendment. It is well

established that in order to burden truthful commercial speech, the government must show

---

[28] The TCPA's legislative history reflects Congress's knowledge that it could not restrict facsimiles that were solicited. *See generally* H.R. Rep. No. 317, H.R. Rep. 102-317, 17 H.R. Rep. 102-317, H.R. Rep. No. 317, 102nd Cong., 1st Sess. 1991, 1991 WL 245201 (Leg. Hist.). Addressing the bill's definitions, House Report 102-317 states that the Committee that crafted the bill "relied on the research of the American Law Division of the Congressional Research Service and the American Civil Liberties Union to conclude that these restrictions [were] justified by the magnitude of the problem *and that such restrictions remain faithful to Supreme Court precedent on protections to be accorded 'commercial speech.'*" H.R. Rep. No. 317, H.R. Rep. 102-317, 17 (emphasis added). The House Report then introduced the bill's two restrictions that addressed fax machines; each restricted only "unsolicited advertisements." *Id.* In particular, the House Report stated that the bill made it unlawful "[t]o use any fax machine, computer or other device to send an *unsolicited* advertisement in violation of future FCC regulations." *Id.* (emphasis added).

its proposed restrictions serve "a substantial interest," that the restrictions "directly advance the state interest involved," and that the asserted interest could not "be served as well by a more limited restriction on commercial speech."[29]   It is difficult to imagine that the detailed opt-out notice required on *unsolicited* faxes would pass muster under this standard as the most limited means available to address any substantial state interest in regulating *solicited* faxes.  Indeed, the Eighth Circuit expressed skepticism over precisely this point in *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).  The court noted that, although it previously found "the TCPA provisions regarding unsolicited fax advertisements were not an unconstitutional restriction upon commercial speech" under the *Central Hudson* test, that analysis and conclusion "would not necessarily be the same if applied to the agency's extension of authority over solicited advertisements."[30]

Faxes sent pursuant to the recipient's express permission or invitation certainly implicate no state interest in "protecting the public from the cost shifting and interference caused by *unwanted* fax advertisements,"[31] and the Commission has never identified any other state interest sufficient to justify regulations dictating the contents of consensual communications between commercial entities.  Moreover, applying these detailed opt-out requirements to solicited faxes between entities with an established business relationship, particularly under circumstances where the recipient clearly knows how to submit an effective opt-out request, would be sufficiently arbitrary and capricious so as to raise serious due process concerns under the Fifth Amendment.  These due process concerns are amplified if the rules governing solicited faxes under such circumstances purportedly were promulgated under

---

[29] *Central Hudson Gas & Elec. Corp.* v. *Public Servo Comm'n,* 447 U.S. 557, 564 (1980).
[30] *Nack*, 715 F.3d 680 at 687 (declining to consider constitutional challenge raised for the first time on appeal).
[31] *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 660 (2003) (emphasis added).

11

a statutory authority that could expose fax senders to excessive statutory damages that are radically disproportionate to the *de minimis* actual damages, if any, sustained by recipients.[32]

## II.   Alternatively, the Commission Should Clarify that the Statutory Basis of Section 64.1200(a)(4)(iv) Is Not 47 U.S.C. § 227(b).

If the Commission declines to interpret Section 64.1200(a)(4)(iv) to exclude fax advertisements for which the sender has obtained prior express consent, the Commission should at least issue a declaratory ruling that Section 227(b) of the Communications Act is not the statutory basis for its rule.  Such a ruling would clarify the Commission's authority for Section 64.1200(a)(4)(iv) while making clear to litigants and the courts that solicited faxes sent without the precise opt-out language described in the Commission's rules cannot form the basis of a private action under the TCPA.

The statutory basis for Section 64.1200(a)(4)(iv) is not clear. The Commission cited eleven different statutory provisions in the *JFPA Order* as authority for the multiple amendments it made to Section 64.1200, of which the addition of Section 64.1200(a)(4)(iv) was only one. It is therefore unclear if the Commission relied on its authority under Section 227 (which contains the private right of action provision) in promulgating Section 64.1200(a)(4)(iv), or on one of the other cited provisions.  A clarification by the Commission that its basis for promulgating Section 64.1200(a)(4)(iv) was some statutory provision other than Section 227(b) would serve both the Commission's interests and promote the public's interest in fairness and justice.

By making clear that Section 64.1200(a)(4)(iv) is not grounded in the Commission's authority under Section 227(b), the Commission could assist businesses by removing the threat

---

[32] *See, e.g., Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70, 71 (1st Cir. 2013) (statutory damage award may violate due process "'where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable'" in light

of massive class action lawsuits based solely on communications with consenting consumers.  At the same time, articulating a different statutory basis for the rule would preserve the Commission's ability to enforce the rule as appropriate using its broad, flexible enforcement powers.  Purported violations of the rule where there is no actual harm could then still be addressed, but would not be subject to multi-millions of dollars in statutory damages claims.  By contrast, declining to clarify the basis of Section 64.1200(a)(4)(iv) leaves the courts to guess at the Commission's exercise of jurisdictional authority, complicating the class action suits that are pending around the country and prejudicing litigants who could otherwise have a clear defense.

The Commission therefore should issue a declaratory ruling clarifying that the statutory provision the Commission relied on in promulgating Section 64.1200(a)(4)(iv) of its rules was *not* Section 227(b).

## III.   The Commission Should Confirm that Substantially Compliant Opt-Out Notices on Solicited Faxes Satisfy Sections 64.1200(a)(4)(iii) and (iv) of the Commission's Rules.

Even if the Commission maintains that it has authority under Section 227(b) to regulate solicited faxes, the Commission should recognize that strict compliance with the notice requirements specified for *unsolicited* faxes is not necessary for faxes expressly invited or consented to by the recipient. When Congress enacted the TCPA, one of its purposes was to establish restrictions on the use of fax machines to transmit "unsolicited advertisements" — that is, "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[33] Among other topics, Section 64.1200 of the Commission's rules sets out various requirements for companies that transmit unsolicited faxes, including authority to transmit unsolicited faxes to parties with whom the sender has an

---

[33] 47 U.S.C. § 227(a)(5).

13

established business relationship, provided the faxes include an opt-out notice and comply with other requirements.[34]

The Merck fax at issue in the Connecticut litigation is far different from the unsolicited advertisements Congress sought to restrict.  In the first place, the fax at issue is an invitations to a "telesymposium on important clinical information about schizophrenia and bipolar disorder."  Nothing on the face of the fax promotes the commercial availability or quality of any good or service; nor does the fax contain the name of any commercially available product.

Assuming *arguendo* that the fax constituted an "advertisement," it was sent with permission.  MedLearning placed a personal phone call to the office of each fax recipient and carried a careful process to ensure consent before sending any fax. It obtained the fax numbers through those calls.  Thus, faxes sent by MedLearning were sent to physicians or other health care professionals' offices who had provided a fax number — on an individual basis — to Merck or MedLearning.  Moreover, each fax contained a clear and conspicuous opt-out notice on the first page with all the necessary information to effect a cost-free opt-out.[35]  Specifically, the notice stated: "To be removed from the fax list for this program, please initial here __ and fax this form back to (207) 288-2307 or call (877) 963-3532."  Kaye made no allegation that he attempted to use this opt-out process unsuccessfully.

In the absence of the broader declaratory ruling requested herein, the Commission should at least clarify that a fax sent pursuant to the recipient's prior express invitation or permission and that includes a demonstrably effective opt-out notice complies substantially with 47 C.F.R. § 64.1200, whether or not the opt-out notice is in perfect conformity with the opt-out notice required for *unsolicited* faxes.  The Commission itself recognized in the *Junk*

---

[34] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).
[35] *See* § 64.1200(a)(4)(iii).

14

*Fax Order* that it was unnecessary to specify minutiae such as "the font type, size and wording of the notice," and that doing so "might interfere with fax senders' ability to design notices that serve their customers."[36] In other contexts, the Commission has recognized that "absolute compliance with each component of the rules may not always be necessary to fulfill the purposes of the statute."[37] Here, the opt-out notice provided in the faxes that are the subject of the Connecticut litigation fulfilled the purposes of the TCPA: protecting consumers and businesses from unsolicited faxes and ensuring that fax advertisers provide effective opt-out mechanisms. In this case, requiring "absolute compliance with each component of the rules" — to the extent the opt-out notice rules even require inclusion of the technical details as Kaye alleges — does nothing to protect consumers; instead, such a rigid interpretation exposes legitimate enterprises who acted in good faith to potentially staggering levels of statutory damages based on minor technical faults.

---

[36] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, CG Docket No. 02-278 *et al.*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3801 (2006) ("*Junk Fax Order*"). *Cf. Facilitating the Deployment of Text-to-911 & Other Next Generation 911 Applications*, PS Docket No. 11-153 *et al.*, Report and Order, 28 FCC Rcd 7556, 7581 (2013) (declining to require specific wording in text providers' bounce-back messages informing consumers when text-to-911 is not available, in order to "afford[] covered text providers with the necessary guidance and flexibility to create bounce-back messages that are understood by their particular consumer base"); *Implementation of Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information et al.*, CG Docket No. 96-115 *et al.*, Third Report and Order and Third Further Notice of Proposed Rulemaking, 17 F.C.C.R. 14860, 14907 (2002) (declining "to mandate specific language" carriers must use when describing consequences of customer's denying carrier access to CPNI, based on conclusion that rules "provide carriers with sufficient guidance to formulate scripts that inform customers in a neutral manner of significant consequences, without unduly restricting carrier flexibility in delivering the message").
[37] *Provision of Improved Telecommunications Relay Services and Speech-To-Speech Services for Individuals with Hearing and Speech Disabilities*, 20 FCC Rcd 5433, 5445 (2005) (internal quotations omitted) (noting a TRS provider may be eligible for TRS Fund reimbursement "if it has substantially complied with Section 64.604").

## IV.    Alternatively, Merck Should Be Granted a Waiver.

In the alternative, Merck asks the Commission to waive strict compliance with Sections 64.1200(a)(4)(iii) and (iv) with respect to the faxes in question, pursuant to the Commission's authority under Section 1.3 of its rules.[38]   The Commission may waive any provision of its rules "for good cause shown"[39] when it concludes that a waiver would serve the public interest, considering all relevant factors.[40]   For the reasons discussed above, a waiver with respect to the faxes described herein would serve the public interest by avoiding an abuse of the private right of action created by the TCPA.  There is no public interest in subjecting Merck to a lawsuit seeking massive damages on the basis of faxes sent pursuant to the recipients' prior express invitation or permission that included a demonstrably effective opt-out notice on the first page describing a cost-free opt-out mechanism.  It serves neither the statutory purposes nor the interests of justice to elevate form over substance by permitting plaintiffs who were not aggrieved — and their attorneys — to tie up courts and judicial resources, potentially for years, based on overwrought complaints about minor technical defects.

In other contexts, the Commission has retroactively waived similarly minor violations of its rules.  For instance, the Commission granted a conditional retroactive waiver to a manufacturer of improperly labeled emergency telephones for elevators, in part based on its conclusion that, under the circumstances, no harm to the Public Switched Telephone Network had occurred or was likely to occur, and affected purchasers "have actual knowledge of the manufacturer's identity, and thus have not been harmed by the

---

[38] 47 C.F.R. § 1.3.

[39] *Id.*

[40] *See Rath Microtech Complaint Regarding Electronic Micro Systems, Inc.*, Memorandum Opinion and Order, 16 FCC Rcd 16710, 16714 (Network Servs. Div. 2005) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), and *FPC v. Texaco Inc.*, 377 U.S. 33, 39 (1964).)

improper labeling."[41]  Similar logic supports the waiver requested here:  the use of an effective opt-out notice on certain fax messages that were expressly invited or permitted caused no harm to Kaye or to the public interest.  Given the draconian consequences that could attach to such alleged minor failures under Kaye's theory of the scope of the TCPA private right of action, there is good cause for the Commission to waive these defects to the extent the Commission does not find Merck was in substantial compliance with Sections 64.1200(a)(4)(iii) and (iv) of the rules.

### CONCLUSION

For the reasons stated above, the Commission should issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of the Commission's regulations does not apply to solicited faxes, or, alternatively, that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b). At a minimum, the Commission could clarify that solicited faxes sent with effective opt-out notices do not violate the Rule or any other regulation promulgated by the Commission under the TCPA.

Finally, if the Commission declines to issue the requested declaratory rulings, the Commission should grant Merck a waiver of Sections 64.1200(a)(4)(iii) and (iv) of the Commission's rules under the circumstances described herein.

---

[41] *Rath Microtech Complaint*, 16 FCC Rcd at 16713 & n.18, 16715.

Respectfully submitted,


Merck & Company, Inc.

/s/ Kim Rinehart
Kim E. Rinehart
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, Connecticut  06508-1832
(203) 498-4400
(203) 782-2889 fax
krinehart@wiggin.com

*Counsel for Merck & Company, Inc.*

18

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | CG Docket No. 02-278 |
| Petition of CARFAX, Inc. for Declaratory | ) | |
| Ruling and/or Waiver of Section | ) | CG Docket No 05-338 |
| 64.1200(a)(4)(iv) of the Commission's Rules | ) | |

**PETITION OF CARFAX, INC. FOR**
**DECLARATORY RULING AND/OR WAIVER OF**
**SECTION 64.1200(a)(4)(IV) OF THE COMMISSION'S RULES**

Mark W. Brennan
Deborah K. Broderson
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004

*Counsel to CARFAX, Inc.*

July 11, 2014

## EXECUTIVE SUMMARY

CARFAX, Inc. ("CARFAX") respectfully requests that the Federal Communications Commission ("FCC") issue a declaratory ruling that Section 64.1200(a)(4)(iv) of its rules, 47 C.F.R. § 64.1200(a)(4)(iv), does not apply to faxes sent with the "prior express invitation or permission" of the recipient.  The language of Section 64.1200(a)(4)(iv) and the FCC's implementing order is unclear and inconsistent with Congressional intent.  The FCC also lacks the statutory authority to apply Section 64.1200(a)(4)(iv) to such "solicited" faxes.  In addition, applying Section 64.1200(a)(4)(iv) to solicited faxes raises significant First Amendment concerns.  In the alternative, CARFAX asks the FCC to issue a declaratory ruling that 47 U.S.C. § 227(b) is not the statutory basis of Section 64.1200(a)(4)(iv).

If the FCC declines to issue a declaratory ruling, CARFAX respectfully requests that the agency grant a retroactive waiver of Section 64.1200(a)(4)(iv) for any solicited fax sent by CARFAX after the effective date of that regulation.  There is no public interest benefit to enforcing Section 64.1200(a)(4)(iv) with respect to recipients that have already provided "prior express invitation or permission" to receive fax advertisements.

To the extent that the FCC determines that any declaratory ruling, waiver or other relief may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient with whom the sender has an established business relationship, CARFAX respectfully requests that it also be granted such relief.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND BACKGROUND ......................................................................... 2

II.  DISCUSSION .............................................................................................................. 5

    A.   The Commission Should Issue a Declaratory Ruling That Section 64.1200(a)(4)(iv) Does Not Apply to Faxes Sent with the "Prior Express Invitation or Permission" of the Recipient... 5

        1.   The language of Section 64.1200(a)(4)(iv) and the Commission's implementing order is unclear and inconsistent with Congressional intent. ........................................................ 6

        2.   The FCC lacks the statutory authority to apply Section 64.1200(a)(4)(iv) to solicited faxes. .......................................................................................................................... 7

        3.   Applying Section 64.1200(a)(4)(iv) to solicited faxes raises significant First Amendment concerns.............................................................................................. 8

    B.   In the Alternative, the FCC Should Issue a Declaratory Ruling that 47 U.S.C. § 227(b) Is Not the Statutory Basis of Section 64.1200(a)(4)(iv). ............................................................ 9

    C.   In the Alternative, the FCC Should Grant CARFAX a Retroactive Waiver To Provide Business with Certainty that Sending Consented-To Fax Advertisements Will Not Subject Them to Massive Financial Penalties. .................................................................. 11

III. CONCLUSION.................................................................................................... 12

iii

Before the
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | CG Docket No. 02-278 |
| Petition of CARFAX, Inc. for Declaratory | ) | |
| Ruling and/or Waiver of Section | ) | CG Docket No 05-338 |
| 64.1200(a)(4)(iv) of the Commission's Rules | ) | |

**PETITION OF CARFAX, INC.**
**FOR DECLARATORY RULING AND/OR WAIVER OF**
**SECTION 64.1200(a)(4)(IV) OF THE COMMISSION'S RULES**

Pursuant to Sections 1.2 and 1.3 of the Federal Communication Commission's ("FCC's" or "Commission's") rules,[1] CARFAX, Inc. ("CARFAX") respectfully requests that the FCC issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of its rules[2] does not apply to facsimile advertisements that are sent with the recipient's "prior express invitation or permission" ("solicited faxes"). Such a clarification would be consistent with the plain language of the Telephone Consumer Protection Act ("TCPA"), as codified in 47 U.S.C. § 227 and amended by the Junk Fax Prevention Act of 2005 ("JFPA").[3] Alternatively, the Commission should issue a declaratory ruling clarifying that the statutory basis for implementing Section 64.1200(a)(4)(iv) is not Section 227(b) of the Communications Act.[4] A declaratory ruling is necessary to reduce the amount of confusion and litigation that has been generated by uncertainty about the rule, which not only unfairly burdens organizations that have sent solicited faxes in

---

[1] 47 C.F.R. §§ 1.2, 1.3.

[2] *Id.* § 64.1200(a)(4)(iv).

[3] *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991) ("TCPA"); Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) ("JFPA"). The TCPA and the JFPA are codified at 47 U.S.C. § 227.

[4] 47 U.S.C. § 227(b).

1

good faith but also wastes judicial resources on resolving claims that Congress never intended to create.

Should the FCC decline to issue either of the requested declaratory rulings, CARFAX respectfully requests that the Commission grant a retroactive waiver of Section 64.1200(a)(4)(iv) for any solicited facsimile sent by CARFAX or its affiliates or subsidiaries (or sent on its or their behalf) after the effective date of the regulation.  There is no public interest benefit to enforcing Section 64.1200(a)(4)(iv) with respect to recipients that have already provided "prior express invitation or permission" to receive fax advertisements.  In contrast, enforcement against CARFAX could prevent businesses and consumers from receiving important and requested product safety information, and impose staggering aggregate liability for rule infractions that Congress never intended to apply to solicited faxes.

To the extent that the Commission determines that any declaratory ruling, waiver, or other relief[5] may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient with whom the sender has an established business relationship, CARFAX respectfully requests that it be granted such relief on the bases described in this Petition.

## I.    INTRODUCTION AND BACKGROUND

CARFAX is a Pennsylvania corporation that provides vehicle history information to buyers and sellers of used cars and light trucks.  CARFAX began offering CARFAX Vehicle History Reports to the dealer market in 1986.  Today, using the unique 17-character vehicle identification number, a CARFAX Report can be generated instantly to provide prospective buyers with information provided to CARFAX by various third parties regarding vehicle

---

[5] *See infra* note 19 (referencing the FCC public notices associated with other similar filings).

2

ownership history, occurrence of accidents, total loss or salvage title history, odometer readings, service records, and other useful data points.

As one way of obtaining information for its vehicle history database, CARFAX enters into agreements with automotive dealers and repair shops that agree to provide certain vehicle history information to CARFAX. As part of these agreements, dealers and repair shops participate in the CARFAX Service Network and receive additional benefits, including free advertising on CARFAX Reports. CARFAX has been sued under the TCPA by an automotive shop that received a fax advertisement from CARFAX that was sent with the shop's "prior express invitation or permission."[6]

The TCPA, as codified in 47 U.S.C. § 227 and amended by the JFPA, prohibits, under certain circumstances, the use of a fax machine to send an "unsolicited advertisement."[7] An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*."[8] Significantly, the JFPA expressly applies only to *unsolicited* fax advertisements, and not to all faxes.[9] Accordingly, the TCPA's general prohibition against fax advertisements does not apply to *solicited* faxes that were sent with the recipient's "prior express invitation or permission."

---

[6] *See Mark Sherman Enterprises, Inc., dba GTM Automotive and Muffler v. CARFAX, Inc.*, Case No. 1:14-CV-04686 (N.D. Ill.). The parties to the litigation dispute, *inter alia*, whether the fax was solicited. However, it is not necessary for the Commission to resolve that dispute in acting on this petition. The disputed factual issues in the case will be resolved by the court and do not impact the issues raised in this petition.

[7] 47 U.S.C. §§ 227(a)(5) and (b)(1)(C).

[8] *Id.* § 227(a)(5) (emphasis added).

[9] *See generally* the JFPA.

3

Case: 4:14-cv-01161-HEA   Doc. #: 23-1   Filed: 09/09/14   Page: 56 of 65 PageID #: 190

Although the JFPA expressly applies only to unsolicited faxes, in 2006 the Commission promulgated rules implementing the JFPA's requirements.[10] It adopted Section 64.1200(a)(4)(iv), which purports to impose opt-out notice requirements on solicited fax advertisements.[11] Since the FCC adopted Section 64.1200(a)(4)(iv), a steady stream of plaintiffs has seized on the ambiguity of this rule to bring numerous class action lawsuits under Section 227(b) of the TCPA.[12] These lawsuits have been brought against companies acting in good faith and engaging in solicited communications in which the fax recipients had provided "prior express invitation or permission," had an established business relationship, or both, to send the faxes. Many of these class action lawsuits seek millions of dollars in damages based solely on the opt-out requirements contained in Section 64.1200(a)(4)(iv).

A recent Eighth Circuit Court of Appeals decision, *Nack v. Walburg*, squarely addressed the issue of whether Section 64.1200(a)(4)(iv) applies to solicited faxes.[13] In *Nack*, the defendant transmitted a single solicited fax that failed to contain the opt-out language that the plaintiff claimed was required by the FCC's rules.[14] The Eighth Circuit in *Nack* recognized that it was "questionable" whether the FCC could have properly promulgated Section 64.1200(a)(4)(iv) under the authority granted to the agency by the TCPA, but found that the Administrative Orders Review Act ("Hobbs Act")[15] precluded it from holding the regulation

---

[10] *See generally Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) ("*JFPA Order*").

[11] *See* 47 C.F.R. § 64.1200(a)(4)(iv) (requiring that a solicited fax advertisement include an opt-out notice in compliance with the unsolicited fax advertisement opt-out notice requirements in 47 C.F.R. § 64.1200(a)(4)(iii)).

[12] 47 U.S.C. § 227(b)(3)(A)-(C).

[13] 715 F.3d 680 (8th Cir. 2013).

[14] *Id.* at 682.

[15] 28 U.S.C. § 2342 *et seq.*

4

invalid outside of the statutory procedure mandated by Congress.[16]  The *Nack* court suggested

that the defendants might obtain relief directly from the Commission,[17] and the defendants

subsequently filed a Petition for Declaratory Ruling and/or Waiver with the Commission that

remains pending.[18]  More than fifteen other parties that have been the subject of similar lawsuits

have also filed substantively similar petitions, seeking relief from class action lawsuits brought

under a misguided interpretation of the FCC's rules.[19]  Consistent with the concerns raised in

those petitions, CARFAX requests that the Commission issue a declaratory ruling clarifying

Section 64.1200(a)(4)(iv) or, in the alternative, grant CARFAX a retroactive waiver of Section

64.1200(a)(4)(iv).

## II.   DISCUSSION

### A.   The Commission Should Issue a Declaratory Ruling That Section 64.1200(a)(4)(iv) Does Not Apply to Faxes Sent with the "Prior Express Invitation or Permission" of the Recipient.

The Commission should issue a declaratory ruling clarifying that Section

64.1200(a)(4)(iv) does not apply to solicited facsimiles sent with the "prior express invitation or

permission" of the receiving party.  Specifically, the FCC should find that: (i) the plain language

of the rule and the Commission order implementing the rule is unclear with respect to the

provision's scope and applicability, and inconsistent with the TCPA; (ii) applying Section

64.1200(4)(iv) to solicited faxes sent with the "prior express invitation or permission" of the

recipient would exceed the Commission's authority under the JFPA and the Communications

---

[16] *Nack v. Walburg*, 715 F.3d at 682.

[17] *Id.* at 687.

[18] Petition of Douglas Paul Walburg and Richie Enterprises, LLC for Declaratory Ruling and/or Waiver, CG Docket Nos. 02-278 & 05-338 (filed Aug. 19, 2013).

[19] *See, e.g., Consumer and Governmental Affairs Bureau Seeks Comment on Petition Concerning the Commission's Rule on Opt-Out Notices on Fax Advertisements*, CG Dockets Nos. 02-278 and 05-338, Public Notice, DA 14-923 (rel. June 27, 2014); Public Notice, DA 14-734 (rel. May 30, 2014); Public Notice, DA 14-556 (rel. Apr. 25, 2014); Public Notice, DA 14-416 (rel. Mar. 28, 2014); Public Notice, DA 14-120 (rel. Jan. 31, 2014).

Act; and (iii) interpreting Section 64.1200(a)(4)(iv) to apply to solicited faxes would raise

significant First Amendment concerns.

     **1.**     **The language of Section 64.1200(a)(4)(iv) and the Commission's**
                **implementing order is unclear and inconsistent with Congressional**
                **intent.**

     The FCC should clarify the ambiguous language of Section 64.1200(a)(4)(iv) and the

Commission's implementing order, which on their face cannot be interpreted in a manner that is

consistent, either internally or with the TCPA. In relevant part, the Commission's rule provides

that "no person or entity may:"

> Use a telephone facsimile machine, computer, or other device to send an
> *unsolicited* advertisement to a telephone facsimile machine, unless...[a]
> facsimile advertisement that is sent to a recipient that *has provided prior
> express invitation or permission* to the sender must include an opt-out
> notice that complies with the requirements in paragraph a(4)(iii) of this
> section.[20]

The plain language of the rule begins by establishing a prohibition on unsolicited advertisements

and then creates exceptions to that prohibition based on the existence of an established business

relationship[21] and the provision of an opt-out notice.[22] The text then inexplicably references

solicited fax advertisements in the context of those exceptions for unsolicited advertisements.[23]

     The Commission's order implementing Section 64.1200(a)(4)(iv) also contributes to the

confusion. The *JFPA Order* plainly states the requirement to provide an opt-out notice "only

applies to communications that constitute unsolicited advertisements."[24] However, later in the

*JFPA Order*, the FCC also provides that "entities that send facsimile advertisements to

consumers from whom they obtained permission must include on the advertisements their opt-

---

[20] 47 C.F.R. § 64.1200(a)(4) (emphasis added).

[21] *Id.* § 64.1200(a)(4)(i).

[22] *Id.* § 64.1200(a)(4)(iii).

[23] *Id.* § 64.1200(a)(4)(iv).

[24] *JFPA Order* ¶ 42 n.154.

out notice."[25]   Accordingly, it is impossible to definitively conclude, based on the plain text of the rule or the implementing order, that Section 64.1200(a)(4)(iv) is intended to reach solicited faxes.

Nothing in the text of the TCPA or the legislative history of that statute indicates that Congress intended to apply such requirements to solicited faxes.[26]   Moreover, the Commission never indicated in its Notice of Proposed Rulemaking implementing the JFPA provisions of the TCPA that it was considering applying Section 64.1200(a)(4)(iv) or any other regulation to solicited faxes sent with the recipient's "prior express invitation or permission."[27]   The TCPA, as codified in 47 U.S.C. § 227 and amended by the JFPA, plainly only applies to unsolicited faxes, and the Commission should clarify that Section 64.1200(a)(4)(iv) does not apply to solicited fax advertisements.

### 2.      The FCC lacks the statutory authority to apply Section 64.1200(a)(4)(iv) to solicited faxes.

Congress specifically limited Section 227(b) of the TCPA to unsolicited advertisements. In doing so, Congress also restricted the Commission's jurisdiction to promulgate new regulations regarding that particular type of communication.[28]   Indeed, the Commission itself has recognized that the TCPA's scope is limited to unsolicited fax advertisements.  For example, the

---

[25] *Id.* ¶ 48.

[26] *See, e.g.*, 47 U.S.C. § 227(b)(1),(2); S. Rep. No. 102-178 at 3 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970; S. Rep. No. 109-76 at 1 (2005), reprinted in 2005 U.S.C.C.A.N. 319.

[27] *See generally Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, Notice of Proposed Rulemaking and Order, 20 FCC Rcd 19758 (2005).

[28] *See, e.g., Am. Library Ass'n v. FCC*, 406 F.3d 689, 705 (D.C. Cir. 2005) ("[T]he Commission can only issue regulations on subjects over which it has been delegated authority by Congress."); *ACLU v. FCC*, 823 F.2d 1554, 1571 (D.C. Cir. 1987) (where Congress has addressed a question with a "specific statutory provision," the Commission lacks the authority to establish a contrary regulation on the same subject).

7

FCC notes in the *JFPA Order* that it "amend[s] the Commission's rules on *unsolicited* facsimile advertisements as required by the [JFPA]."[29]

Absent an express grant of jurisdiction from Congress, an agency is not free to promulgate new rules.[30] As the Supreme Court recently reminded another federal agency, an agency's "power to execute laws does not include the power to revise clear statutory terms." In interpreting ambiguous statutory language, an agency must operate "within the bounds of reasonable interpretation."[31] As neither the TCPA nor the JFPA directed the FCC to adopt rules requiring an opt-out message for solicited facsimiles, applying Section 64.1200(a)(iv)(4) to faxes sent with the "prior express invitation or permission" of the recipient is impermissible under the Commission's statutory authority.

### 3. Applying Section 64.1200(a)(4)(iv) to solicited faxes raises significant First Amendment concerns.

The Supreme Court has established that lawful and truthful commercial speech may be subject to regulation only where the government can show that the proposed restriction directly advances a substantial government interest and that the rule "is not more extensive than is necessary to serve that interest."[32] The Commission cannot meet this standard by applying Section 64.1200(a)(4)(iv) to solicited fax advertisements.

Courts that have applied that test to *unsolicited* faxes under Section 227(b) have upheld the FCC's requirements by recognizing the existence of "a substantial interest in restricting

---

[29] *See, e.g., JFPA Order* ¶ 1 (emphasis added); *see also id.* ¶ 2 ("[T]he TCPA prohibits the use of any telephone facsimile machine ... to send an 'unsolicited advertisement.'"); *id* ¶ 7 ("On December 9, 2005, the Commission released a Notice of Proposed Rulemaking proposing modifications to the Commission's rules on unsolicited facsimile advertisements to implement the amendments required by the [JFPA].").

[30] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also, e.g., Am. Library Ass'n*, 406 F.3d at 705; *ACLU*, 823 F.2d at 1571.

[31] *Util. Air Regulatory Grp. v. EPA*, 573 U.S. __, 2014 U.S. LEXIS 4377, at *17, 19-20 (2014) ("[A]n agency interpretation that is 'inconsisten[t] with the design and structure of the statute as a whole...does not merit deference."); *see also City of Arlington, Tex. v. FCC*, 133 S.Ct 1863, 1869-71 (2013).

[32] *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

8

unsolicited fax advertisements in order to prevent the cost shifting and interference such unwanted advertising places on the recipient."[33]  But the Eighth Circuit found in *Nack* that interest had not been demonstrated in the context of *solicited* faxes.[34]

The FCC has not established that its rule requiring solicited faxes to include opt-out notices satisfies the test established by the Supreme Court not to be "more extensive than is necessary" to advance a substantial governmental interest.[35]  Indeed, the Commission has not attempted to build a record to justify application of this rule to solicited fax advertisements and has not explained how applying the opt-out notice requirement to solicited fax advertisements would directly advance an important government interest or why a less burdensome requirement could not serve that interest.  For these reasons, the Commission should clarify that the rule does not apply to solicited fax advertisements.

**B.    In the Alternative, the FCC Should Issue a Declaratory Ruling that 47 U.S.C. § 227(b) Is Not the Statutory Basis of Section 64.1200(a)(4)(iv).**

If the Commission declines to issue the declaratory ruling as set forth above, it should issue a declaratory ruling clarifying that Section 227(b) of the Communications Act is not the statutory basis for Section 64.1200(a)(4)(iv).  Although the Commission cited eleven statutory provisions in the *JFPA Order* as the basis for the numerous amendments made to Section 64.1200, it failed to specify the statutory basis for Section 64.1200(a)(4)(iv).[36]

---

[33] *Missouri v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003).

[34] *See Nack*, 715 F.3d at 687 ("[T]he analysis and conclusion as set forth in *American Blast Fax* would not necessarily be the same if applied to the agency's extension of authority over solicited advertisements."); *see also* H.R. Rep. No. 102-317, 1991 WL 245201, at *10 (1991) (recognizing concerns regarding governmental restrictions on commercial speech).

[35] *Hudson Gas*, 447 U.S. at 566.

[36] *See JFPA Order* ¶ 64 (adopting order "pursuant to the authority contained in sections 1-4, 201, 202, 217, 227, 258, 303(r), and 332 of the Communications Act of 1934, as amended").

9

A declaratory ruling confirming that Section 227(b) is not the statutory basis for Section 64.1200(a)(4)(iv) would benefit the FCC, as it would eliminate the need for parties to continue to file petitions with the Commission to resolve this ongoing issue.  A declaratory ruling would also benefit the courts and the public by clarifying that solicited fax advertisements sent with the recipient's "prior express invitation or permission" do not provide a basis for a private action under the TCPA.  Clarifying that there is no private right of action for violations of this rule section would also help to ensure fair treatment for businesses acting in good faith that could otherwise be subject to potentially devastating class action lawsuits based merely on sending fax advertisements to recipients who had given "prior express invitation or permission" to receive them, or invited the sender to provide them.

By clarifying that Section 64.1200(a)(4)(iv) is not grounded in the Commission's authority under Section 227(b), the Commission has the opportunity to ensure fair treatment for the parties impacted by this rule while also upholding the Commission's interests.[37]  Clarifying the statutory basis for the rule section would enable the Commission to implement and achieve the rule's objective more effectively while not subjecting small businesses or other organizations to class action lawsuits with staggering penalties.  Without the requested clarification, courts will be left to guess at the Commission's jurisdictional authority and intent for the rule, injecting greater uncertainty into the many pending lawsuits that have arisen as a result of the ambiguity of Section 64.1200(a)(4)(iv) and potentially depriving defendants of a valid defense.

---

[37] *Cf. Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 (D.C. Cir. 1977) (requiring agencies to articulate the basis for their rules can "assist judicial review" and help to ensure "fair treatment for persons affected by rule.").

10

**C.** **In the Alternative, the FCC Should Grant CARFAX a Retroactive Waiver To Provide Business with Certainty that Sending Consented-To Fax Advertisements Will Not Subject Them to Massive Financial Penalties.**

If the Commission declines to issue either of the declaratory orders requested in this

Petition, CARFAX respectfully requests that the Commission nonetheless grant a retroactive

waiver of Section 64.1200(a)(4)(iv) for any solicited fax sent by CARFAX after the effective

date of the regulation.  Section 1.3 of the Commission's rules permits the Commission to grant a

waiver for good cause shown,[38] and generally the Commission may grant a waiver of its rules in

a particular case if the relief requested would not undermine the policy objective of the rule in

question and would otherwise serve the public interest.[39]  Furthermore, courts have found that

waiver of a Commission regulation is appropriate if special circumstances warrant a deviation

from the general rule and such deviation would better serve the public interest than would strict

adherence to the general rule.[40]  The circumstances of this case meet this standard.

Granting a waiver to CARFAX is in the public interest.  The TCPA and the

Commission's TCPA rules were intended "to allow consumers to stop *unwanted* faxes in the

future."[41]  The fax advertisement that CARFAX sent, on the other hand, was sent with the "prior

express invitation and permission" to a recipient that had entered into an agreement with

CARFAX.  The recipient was also aware of how to reach CARFAX in the event it desired to opt

out of future fax communications.

CARFAX's service provides consumers with important product safety information and is

a significant tool in assisting purchasers of used vehicles to determine whether the vehicle that

they are considering buying has a history of routine service maintenance.  In addition, businesses

---

[38] 47 C.F.R. § 1.3.

[39] *See WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969); 47 C.F.R. § 1.925.

[40] *See Ne. Cellular Tel. Co. v. FCC*, 897 F. 2d 1164, 1166 (D.C. Cir. 1990).

[41] *JFPA Order* ¶ 48.

that repair and sell motor vehicles rely on CARFAX's services to provide their customers with informed, high-quality products and services. Requiring strict compliance with Section 64.1200(a)(4)(iv) with respect to solicited faxes, and exposing CARFAX and other good faith actors to significant class action liability would be inequitable, unduly burdensome, and contrary to the public interest. As discussed above, in light of the ambiguity and confusion regarding the scope and applicability of Section 64.1200(a)(4)(iv), denial of a waiver could also impose substantial harm on CARFAX and other organizations.

As a final matter, to the extent that the Commission determines that any declaratory ruling, waiver, or other relief may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient with whom the sender has an established business relationship, CARFAX respectfully requests that it be granted such relief on the bases described in this Petition.

## III.   CONCLUSION

For the reasons stated above, CARFAX respectfully requests that the Commission issue a declaratory ruling clarifying that Section 64.1200(a)(4)(iv) of the Commission's rules does not apply to solicited fax advertisements. In the alternative, CARFAX respectfully requests that the Commission clarify that the statutory basis for Section 64.1200(a)(4)(iv) is not 47 U.S.C. § 227(b). In the event the Commission declines to issue a declaratory ruling, as requested in this petition, CARFAX respectfully requests that the Commission nonetheless grant CARFAX a retroactive waiver of Section 64.1200(a)(4)(iv) from the effective date of the regulation for any solicited fax sent by CARFAX. To the extent that the Commission determines that any declaratory ruling, waiver, or other relief may be warranted for fax advertisements that are sent without the "prior express invitation or permission" of the recipient but are sent to a recipient

12

with whom the sender has an established business relationship, CARFAX respectfully requests

that it be granted such relief on the bases described in this Petition.

Respectfully submitted,

*/s/ Mark W. Brennan*

Mark W. Brennan
Deborah K. Broderson
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004

*Counsel to CARFAX, Inc.*

July 11, 2014

13